Filed Jan. 29, 1889.

---

No. 14,140.

## MOORMAN v. WOOD.

PROMISSORY NOTE.—*Judgment.*—*Assignment.*—*Endorser.*—Where the payee of a promissory note obtains a judgment thereon against the makers, which he assigns, he can not afterwards maintain an action on the note against an accommodation endorser.

SAME.—*Who Prima Facie an Endorser.*—Where the name of one not the payee is written on the back of a negotiable promissory note, his situation is *prima facie* that of an endorser, and the payee is bound to take notice of his rights as such.

SAME.—*Release of Endorser.*—*Redemption.*—*Contract.*—*Statute of Frauds.*—Where a creditor bids in the property of the debtor at a sale under a mortgage, and induces the latter not to redeem by promising to take a sheriff's deed and hold the land, which is of value sufficient to satisfy

Moorman *v.* Wood.

both his claim and the mortgage debt, as a security for the payment of his claim, but violates his contract, he can not afterwards maintain an action against a surety. Such a contract is not within the statute of frauds.

ATTORNEY AND CLIENT.—*Negligence.*—*Damages.*—Where an attorney negligently fails to take judgment against himself as endorser of a promissory note which he is employed to collect, he is liable to his client for the damages sustained by him.

SAME.—*Burden of Proof.*—The burden is upon an attorney sued for negligence to show that the judgment taken by him was sufficient to protect his client, and to do this he must show that the property of the persons against whom judgment was taken was unencumbered by prior liens, or that the client, by assignment, obtained the full value of his claim.

SAME.—*Taking Judgment.*—*Diligence.*—An attorney who can, by the exercise of reasonable skill and diligence, obtain judgment before the debtor's property is encumbered, is bound to do so, and the failure of the client to redeem from liens which, through his negligence, are prior to the judgment, will not release him from liability.

From the Jay Circuit Court.

*W. A. Thompson, A. O. Marsh* and *J. W. Thompson,* for appellant.

*E. L. Watson* and *J. S. Engle,* for appellee.

ELLIOTT, C. J.—The first paragraph of the appellant's complaint counts on a promissory note, in which the appellant is the payee. The second charges that the defendant so negligently and unskilfully conducted an action in which he was employed as an attorney by the plaintiff as to cause the plaintiff great loss. The second paragraph of the answer is addressed to the first paragraph of the complaint. This paragraph of the answer alleges that the defendant endorsed the note for the accommodation of the makers; that the appellant sued on the note and recovered judgment against the makers; that, at the time the judgment was entered, Jacob B. Blazer, one of the makers, was the owner of two hundred acres of land of the value of ten thousand dollars, and that the judgment became a lien on this land; that the land, over

VOL. 117.—10

all encumbrances, far exceeded in value the amount of the judgment; that the land was ample security for the judgment obtained on the note; that while the judgment was still in full force the appellant assigned all of his interest in it to Cornelius Corwin.

The assignment of the judgment transferred the lien to Corwin, and it seems clear that Moorman could not enforce payment from the endorser after parting with the judgment against the makers of the note. As to the makers, the note was unquestionably merged in the judgment. *Bowen* v. *Eichel*, 91 Ind. 22, and authorities cited.

We confess that we are unable to perceive how the assignee could hold the judgment against the makers, and the assignor still have a right of action against the endorser. The assignment of the judgment carried the note bound up in it, and if there is any right of action against the endorser it must be in the assignee of the judgment. The assignee became the exclusive owner of the judgment, and as such owner he was invested with all its incidents. We can not conceive upon what principle it can be held that one party may have a right of action against an endorser, while another has the whole claim against the makers. One incident of the judgment was the lien, and as this lien was in the assignee of the judgment, Moorman did not, and could not, control the security which it afforded. The right to this security being in Corwin, there was nothing to which the endorser could have resorted if Moorman had enforced payment from him. In the event that the endorser should pay the note, he would unquestionably be entitled to be subrogated to the rights of the creditor of the principal, and might take, as an indemnity, the security held by the creditor. Sheldon Sub., sections 119–123; Brandt Sur., sections 370–373; *Sample* v. *Cochran*, 82 Ind. 260.

But Moorman, although he once held a judgment lien, holds no security, for the lien of the judgment has passed from him to his assignee, and it must follow that the only

privity of contract.is that which exists between the assignee of the judgment and the appellee.

We agree with the appellant's counsel that a pleading must proceed on a definite theory, and that it must be sufficient on the theory adopted. *Mescall* v. *Tully,* 91 Ind. 96, and cases cited; *Lane* v. *Schlemmer,* 114 Ind. 296, and cases cited. We also recognize and approve the doctrine declared in the cases cited by appellant, that a party will be held to the theory he assumes to develop. *Graham* v. *Nowlin,* 54 Ind. 389; *Reissner* v. *Oxley,* 80 Ind. 580; *Carver* v. *Carver,* 97 Ind. 497, 516; *Buchanan* v. *State, ex rel.,* 106 Ind. 251; *Louisville, etc., R. W. Co.* v. *Wood,* 113 Ind. 544, 564. But we can not agree that the opposing counsel may assume, without proof, what the theory of a pleading is, and this we think the learned counsel of the appellant have done in this instance.

We can not see that the decision in *Rodenbarger* v. *Bramblett,* 78 Ind. 213, supports appellant's contention. It may be that if Moorman had remained the owner of the judgment he could have maintained an action against the appellee, but he divested himself of all right in the judgment, and thus transferred the security. If Wood should pay the note to Moorman, the payment would not destroy the rights of Moorman's assignee; he might still enforce his judgment. This must be true, or else it must be true that a payee may obtain judgment against the makers of a note, assign that judgment, then accept payment from an accommodation endorser, and thus extinguish the judgment as in favor of his assignee, although the assignee had the prior right and ample security. This result can only be avoided by holding that the entire debt evidenced by the note passes, as against a surety or an endorser, to the assignee of the judgment. This conclusion is the only one which will preserve the endorser's right of subrogation, and, as this right must be preserved, this is the only valid conclusion. The note is not the debt, it is simply the evidence of the debt, and when the debt

passed to Corwin, Moorman was no longer in a situation to extinguish it, or to impair his assignee's lien, or to destroy the endorser's right of subrogation.

The case of *Noble* v. *Merrill,* 48 Maine, 140, is not in point, for what was there held is, that the assignment of a part of a judgment does not extinguish the part not assigned. There is no such question here. The question here is, can a creditor, who has assigned the whole judgment taken on a promissory note, recover judgment against an endorser?

An entire demand, such as a promissory note constitutes, can not be split into parts, and, as the answer avers that the judgment was taken on the note, it is made to appear, *prima facie,* at least, that it was for the entire demand. Especially is this so, for the reason that the answer avers that the judgment was rendered on the note for $———, since the most that can be said, in any event, is that there is some uncertainty in the pleading. The remedy for such a defect is by motion.

The name of the payee is written in the body of the note, and Wood's name is written on the back. *Prima facie,* the situation of Wood is that of an endorser, as the note is negotiable by the law merchant. The law imports into the endorsement of a promissory note governed by the law merchant, a contract which, as a general rule, can not be contradicted by parol evidence. *Pool* v. *Anderson,* 116 Ind. 88; *Knopf* v. *Morel,* 111 Ind. 570; *Stack* v. *Beach,* 74 Ind. 571; *Kealing* v. *Vansickle,* 74 Ind. 529.

We need not here inquire whether there are, or are not, exceptions to the general rule, for all that we are required to decide is that the endorsement created, *prima facie,* the liability of an endorser. We are not concerned with a question between the debtors themselves as to their respective rights against each other, but our investigation relates solely to the rights of an endorser against the payee. The question is, therefore, essentially different from what it would be if the case were one between the makers and the endorser. *Knopf* v. *Morel, supra.*

The appellee occupied a position so far analogous to that of a surety as to be entitled to be subrogated to the securities held by the creditor. *Pownal* v. *Ferrand*, 13 Eng. C. L. 230; *Carter* v. *Black*, 4 Dev. & Bat. 425.

The note on its face informed the payee of the contract of the appellee, and that it was that of an endorser, *Hoffman* v. *Butler*, 105 Ind. 371. This information charged the payee with notice of the rights of the appellee under that contract, and he was, therefore, bound to know that the relinquishment or transfer of a lien which secured the payment of the note relinquished his right to enforce payment from the endorser. This must result, if it be true, as it certainly is, that an endorser is entitled to be subrogated to the security held by the creditor. *Commercial Nat'l Bank* v. *Henninger*, 105 Pa. St. 496; *Union Nat'l Bank* v. *Cooley*, 27 La. Ann. 202; *Stallings* v. *Bank of Americus*, 59 Ga. 701; *Crawford* v. *Logan*, 97 Ill. 396; *Pacific Bank* v. *Mitchell*, 9 Metcf. 297; *Trimble* v. *Thorne*, 16 Johns. 152; *Wallace* v. *McConnell*, 13 Peters, 136.

The endorser who pays a note is undoubtedly entitled to his recourse against the makers, and this recourse he can not have where the judgment against the makers has been assigned.

The question here is not whether the judgment taken against the makers extinguished the debt, but the question is, what was the effect of the assignment of the judgment upon the right of Moorman to sue the endorser? Such cases as *Perry* v. *Saunders*, 36 Iowa, 427, and *Shields* v. *Moore*, 84 Ind. 440, can, therefore, exert no controlling influence in the case. The payee of the note by assigning the judgment stripped himself of all right, and made it impossible that the endorser should, as against him, assert the right of subrogation, thus making it evident that there is no right of action in him. What the rights of Corwin, the assignee, are, against the endorser, is quite another question.

The ingenious argument of appellant's counsel rests on an

illicit assumption ; they assume that Wood can not defeat Moorman unless he shows a full and consummated right to subrogation. This assumption is utterly indefensible. It was enough for the endorser to show that Moorman had made it impossible that the right of subrogation could ever exist. This rule is asserted in the almost countless cases where it is held that the release of any security or right of recourse releases the endorser. Moorman certainly released these rights so far as he could, and in him, at least, there is no cause of action, whatever may be the rights of the assignee of the judgment.

It is not the right of Moorman to challenge the validity of his own assignment, much less has he a right to demand that the appellee should show that his own assignee was not a mere volunteer.

If the fourth paragraph of the answer professed to answer only the first paragraph of the complaint instead of assuming to answer both the paragraphs, we should have no difficulty in holding it to be sufficient, for it pleads substantially the same facts as the second. But the question whether the fourth paragraph answers the cause of action set forth in the second paragraph of the complaint can not be disposed of upon the grounds on which the second paragraph of the answer is held to be good. The appellee was guilty of a tort, for, as he confesses—by not denying—he negligently sacrificed the interests of his client. His breach of professional duty gave his client a complete right of action. This right of action was independent of that resting on the note, and we can not perceive how the assignment of the one transferred or extinguished the other. It may be that the answer is good as a plea in mitigation of damages, but it is not good as a plea in bar, and, therefore, as it goes to the whole claim, it is bad. We are inclined to the opinion that the damages arising from the appellee's breach of duty may be lessened by proving the value of the judgment obtained by him for his client, but we are unwilling to hold that he can completely defeat the

action by showing that the appellant assigned the judgment he obtained. It was the duty of the appellee to have promptly taken judgment against the makers of the note and against himself, or else not to have accepted employment from the appellant. Where an attorney is confessedly guilty of a tort, springing from a neglect of duty, he must show that no loss accrued to his client, or he must respond in damages. He must aver and prove that the judgment he did take was sufficient to fully protect his client, and he can not put upon the client the burden of showing that the judgment fully compensated him. In order to accomplish this result the negligent attorney must show that the property was free from encumbrances, or that the client, by assignment, secured the full value of his claim. He has no right, in such a case as this, to demand that the courts should presume that there were no liens, nor has he a right to demand that the courts should compel the client to redeem from prior liens, nor has he a right to demand that the courts should presume that the full value of the claim was realized from the assignment of the judgment.

The answer under immediate mention not only fails to show that there were no prior encumbrances on the land on which the judgment became a lien, but, on the contrary, it avers that there were such liens. In view of the fact that there was a breach of duty, which, as the complaint avers, and as the answer admits, caused the appellant to lose his claim, the wrong-doer can escape liability only by showing that the loss must have resulted even if he had done his duty, and this answer is far from showing this, for it is not averred that there were any liens on the land of the debtor when the appellee undertook to collect the note, nor is it averred that a judgment, if taken seasonably, would not have constituted the paramount lien.

Moorman had a right, as against the attorney guilty of neglecting his duty, to sell the judgment for what it would bring, provided that he acted in good faith and with reason-

able diligence. The attorney has no right to ask immunity from the consequences of his own wrong, upon the ground that the client should have bought the encumbered land, and redeemed from the encumbrances. An attorney who can, by the exercise of reasonable skill and diligence, obtain judgment before the debtor's property is encumbered, is bound to do so. He has no right to place his client's interests in jeopardy, and they are in jeopardy wherever there are prior liens on the debtor's property. Not every creditor can redeem from prior encumbrances, and to require him to do so, when care, diligence and skill on the part of the attorney would relieve him of that burden, is an inexcusable breach of duty.

Where the client shows negligence, the law justly casts upon the attorney the burden of showing an adequate excuse. If diligence would have been ineffectual, it is for the attorney to show it. *Bourne* v. *Diggles*, 2 Chit. 311; *Brock* v. *Barnes*, 40 Barb. 521; *Howell* v. *Ransom*, 11 Paige, 538; *Jennings* v. *McConnel*, 17 Ill. 148; *Godefroy* v. *Jay*, 7 Bing. 413.

There is reason for extending this rule, none for its abridgment. In this instance the complaint avers that the defendant " fraudulently refused and neglected to take judgment against himself," and that " he so carelessly, negligently and unskilfully conducted the matter of collecting the judgment and claim, that by his delay, carelessness and want of skill he did not collect the debt, and the debtors became insolvent and left the State." The answer fully confesses the truth of these allegations, but falls far short of avoiding them.

One who assumes the profession of an attorney and counsellor at law, takes upon himself important duties and heavy responsibilities. He occupies a position of trust and confidence, and his client has a right to demand of him that he possess reasonable learning and skill, that he shall exercise with reasonable care and diligence that skill, and that he shall exercise it in the utmost good faith. This has ever been the law. Even when lawyers accepted no compensation,

the rule was unfalteringly enforced, and it is now, when compensation is not a matter of favor, but of right, more than ever the duty of the courts to give it full force. If men assume duties they can not discharge, or will not perform, they must respond in damages to those injured by their neglect or failure.

The third paragraph of the answer is directed to the first paragraph of the complaint, and is good. The substance of it is this : The land on which Moorman's judgment was a lien was sold on a decree foreclosing a prior mortgage, and bought by him; the makers of the note made preparations to redeem, and so informed him; he agreed with them that if they would not redeem he would, at the expiration of the year allowed for redemption, take a sheriff's deed, and hold the land as security for the payment of his judgment against them ; the land was more than sufficient to pay the mortgage and judgment liens. Moorman incapacitated himself from performing his contract by assigning the sheriff's certificate to Allen T. Lewis, by whom a deed was received from the sheriff, investing him with title.

The appellee's principals had a right to redeem the land. This right they yielded in consideration of Moorman's promise. There was, therefore, a contract resting on a sufficient consideration. The contract was not within the statute of frauds, for it is well settled that a contract preserving to a redemptioner his right, or purchasing it from him, is not within the spirit or letter of the statute. *Tinkler* v. *Swaynie*, 71 Ind. 562 ; *McOuat* v. *Cathcart*, 84 Ind. 567 ; *Butt* v. *Butt*, 91 Ind. 305 ; *Rector* v. *Shirk*, 92 Ind. 31 ; *McMakin* v. *Schenck*, 98 Ind. 264 ; *Cox* v. *Ratcliffe*, 105 Ind. 374 ; *Griffin* v. *Coffey*, 9 B. Mon. 452 ; *Martin* v. *Martin*, 16 B. Mon. 8.

The ruling proposition is well stated in *Cox* v. *Ratcliffe*, *supra*, where it was said by MITCHELL, J., that "Such a contract is not void within the statute of frauds, and if the purchaser was thereby thrown off his guard, and in reliance thereon failed to redeem, the contract will be enforced even

though no money was paid to secure such extension." This doctrine is most just and equitable. To permit a man who induces another to yield a right to redeem, to repudiate his contract, and thus defeat a redemption, would shock every right-thinking man's sense of justice.

In such cases as this, the redemptioner has an existing interest in the land, and he acquires no new estate by the postponement of the time for redemption, nor does the holder of the sheriff's certificate part with any estate in the land. All that the latter does is to grant the redemptioner time in which to exercise his pre-existing right. It is this element which distinguishes this case from *Rucker* v. *Steelman*, 73 Ind. 396, and cases of the same class.

For the error in overruling the demurrer to the fourth paragraph of the answer, the judgment is reversed.

