[No. 8280.   Department Two.   November 12, 1909.]

GALENA NATIONAL BANK, *Appellant*, v. E. RIPLEY,
*Respondent*.[1]

APPEAL—REVIEW—DENIAL OF NEW TRIAL. The rule that the grant-
ing of a new trial for insufficiency of the evidence will not be re-
versed except for abuse of discretion, does not apply where the evi-
dence necessarily and without conflict sustains the verdict.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE. A new
trial should not be granted for newly discovered evidence consisting
of a letter that could not be found, where its loss and contents were
proven at the trial, as the evidence would be only cumulative.

BILLS AND NOTES—CONSIDERATION — VALIDITY — FORBEARANCE. A
note given by a son, to cover a shortage of his deceased father, an
officer in a bank, is not shown to be given for an unlawful consid-
eration by the fact that it was desired to keep the defalcation quiet,
where the bank forbore to make claim against the decedent's estate,
since such forbearance constitutes a good consideration.

Appeal from an order of the superior court for King
county, Albertson, J., entered May 28, 1909, granting de-
fendant a new trial in an action on promissory notes. Re-
versed.

*Chas. E. Congleton* and *Milo A. Root*, for appellant.

*Byers & Byers*, for respondent.

CROW, J.—This action was commenced by the Galena Na-
tional Bank, a corporation, against E. Ripley, to recover
the amount claimed to be due on three promissory notes. On
trial without a jury, the court ordered judgment in favor of
the plaintiff. Thereupon the defendant filed a motion for a
new trial, which was sustained, and the plaintiff has appealed
from the order granting the new trial.

The complaint is in usual form, based upon three promis-
sory notes executed by the respondent, who pleaded want of
consideration. The evidence discloses the following facts:
That respondent's father was for many years cashier of the

[1]Reported in 104 Pac. 807.

appellant bank at Galena, Illinois; that shortly after his death in 1893, the bank discovered that he had appropriated its funds to the amount of about $4,700; that it communicated this fact to his son, the respondent, then residing in Seattle, Washington; that the son expressed a desire that the defalcation be kept quiet, and on October 7, 1893, executed and delivered his notes to the bank therefor; that the respondent has since made renewals, the last renewal being the notes pleaded in the complaint, which were executed on February 14, 1905; that respondent has at different times made payments on the notes to the amount of about $250; that the appellant took the notes for the debt of the father, · and refrained from pressing any claim against his estate, and that the deceased left an estate the amount of which was not shown, although the respondent alleged in his answer that his father left an estate, and offered to show on the trial that it was sufficient in amount to have paid the defalcation.

The appellant claims that, as a consideration for the notes, it agreed to, and did, forbear and refrain from making any claim against the estate or giving publicity to the defalcation, doing so at the respondent's request. The respondent in his evidence admits the execution of the notes and that he made the partial payments above mentioned, but insists that the notes were given without any valid consideration; that the appellant did not agree to release his father's estate, and that the notes were given for the accommodation of the appellant only, so that they might be used by it to satisfy the bank examiner who was about to examine and check up the bank. The respondent further testified that he was a single man when the original notes were given; that he has since married, and that the indebtedness, if valid, is his separate obligation. The trial judge announced his decision in favor of the appellant bank for the full amount of its claim, and adjudged the same to be the respondent's separate debt. Thereupon the respondent moved for a new trial on the following grounds: (1) newly discovered evidence, (2) in-

sufficiency of the evidence, and (3) error of law occurring at the trial.

In granting a new trial the trial judge made and entered a written order in which he, in substance, stated that, after having considered an additional letter produced as newly discovered evidence, and after reconsidering the evidence submitted on the trial, he failed to find sufficient evidence of an alleged agreement on the part of the appellant not to present any claim against the estate of the deceased father, or give publicity to the defalcation, and that he granted a new trial upon the ground that the record failed to show any lawful consideration for the notes. The only newly discovered evidence was a letter from the cashier of the bank, the respondent had at the time of the trial and could not then find, but which he did find immediately afterwards. The letter was written to respondent on September 18, 1903, and after stating the amount of the defalcation, reads as follows:

"What can you do? It must be fixed up soon. Examiners may drop in at any time. Will you give your note for 6 or 12 months int. 6% with what security you can, and send it now so it can be entered up and books made right, and come yourself later whenever you can get away. Anything I can do will do gladly. Attend to this at once and oblige."

The respondent contends that the order granting a new trial should not be disturbed; that it was within the discretion of the trial judge; that no abuse of discretion has been shown; that considering the newly discovered evidence with the evidence previously produced, it becomes apparent that there never was any consideration, lawful or otherwise, for the notes, and that the appellant's cashier took advantage of the respondent by prevailing upon him to execute the notes for the sole purpose of satisfying the bank examiner.

The rule that an order granting a new trial cannot be reversed except for an abuse of discretion does not apply when the entire record shows that the evidence necessarily and without conflict sustains the verdict of the jury or finding of the trial court; that it admits of no other conclusion, and that

there is no competent or material evidence to the contrary. The letter contains no newly discovered evidence, being cumulative only. On the trial the respondent testified that either that or some other similar letter had been mislaid by him and could not be found, and was permitted to state its contents. He testified as follows:

"Q. State to the court what the contents of that letter was with reference to why these notes were to be given? A. That the account was overdrawn and that the bank examiner would be liable to be along at a short interval and that he hadn't mentioned the matter to the directors, and wanted to know if I could do anything towards fixing it, and I said I didn't know what I could do, and asked him what the amount was and further particulars, to which he replied that it was something in the neighborhood of $4,700 and that he would suggest that it be put in the form of a note, so that the bank examiner wouldn't have any questions to ask him which might be embarrassing, and that is the substance of it, and I signed the notes which he sent forward at that time."

The fact that the cashier desired an adjustment of the shortage before the arrival of the bank examiner does not necessarily show an unlawful or invalid consideration. Such a desire was certainly business-like, and no improper motive can be inferred from the single fact that the cashier communicated it to the respondent and requested him to make a settlement of the defalcation by giving his notes. The newly discovered letter adds no material fact to the case, nor does it sustain the respondent's contention that the notes were given without any valid consideration or for an invalid consideration. Respondent admitted that he did not want his father's defalcation made public. He so stated in letters written to appellant before and at the time of the execution of the original notes. The bank could only keep the matter quiet by refraining from making any claim against the father's estate, thus releasing its claim, which it did. Respondent must have contemplated this forbearance on the part of the bank when he wrote the letters and later executed

the notes.   In his letter of October 18, 1903, transmitting the original notes to the appellant bank, he said:

"I sign and inclose the notes herewith and will try to pay every dollar in the specified time.   But you know what a hard thing that is with limited resources.   I forward this with the understanding that this unhappy affair is known only to myself and you."

The writing of this letter, which was in evidence, is admitted by the respondent.   His claim that the notes were not to be paid by him is effectually disputed by it, and by his subsequent acts in making renewals and partial payments. The undisputed facts and circumstances of this case lead to the inevitable conclusion that the consideration for the notes was the forbearance of the bank from prosecuting or pressing its valid claim against the father's estate.   Such forbearance upon its part constituted a good and valid consideration. *Bissinger v. Lawson*, 57 Miss. 36; *Nowlin v. Wesson*, 93 Ala. 509, 8 South. 800; *Carpenter v. Page*, 144 Mass. 315, 10 N. E. 853; *Taylor v. Clark* (Tenn.), 35 S. W. 442.

The respondent earnestly insists that the evidence was conflicting, but we find no conflict of material or competent evidence.   He alleged in his answer, and testified on the trial, that the notes were without consideration, but such statements were his own conclusion from undisputed and proven facts which did not warrant any such conclusion.   If a new trial were to be had either with or without a jury on the same evidence and the newly discovered letter, it would be the duty of the trial judge to sustain the appellant's motion for a directed verdict or judgment in its favor, the respondent having utterly failed to sustain his defense of no consideration, and an order denying such motion would be reversed by this court on appeal.

The judgment is reversed, and the cause remanded with instructions to deny the motion for a new trial.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.