## SANGSTER *v.* BRICKER.

[No. 9,399.   Filed January 16, 1918.]

1. PLEADING. — *Demurrer.* — *Memorandum.* — *Statute.* — Where no memorandum accompanied a demurrer to an answer as required by §§344, 348 Burns 1914, Acts 1911 p. 415, it was not error to overrule it.   p. 413.

2. EVIDENCE.—*Secondary Evidence.*—*Admissibility.*—*Contents of Letters.*—In an action on a promissory note, where a witness had previously testified that he had searched the places where he usually kept letters, and could not find a certain letter, and it appeared that the writer did not keep a copy, it was not error to permit the witness to testify as to the contents of the missing letter.   p. 413.

3. APPEAL.—*Harmless Error.*—*Admission of Evidence.*—Where there was other uncontroverted evidence concerning a certain fact, the admission of secondary evidence of a letter relating to such fact was immaterial.   p. 414.

4. WITNESSES.—*Cross-Examination.*—*Scope.*—*Repetition.* — In an action on a note, where a witness had previously testified that he had agreed to sign a new note on the back, the same as he had signed an old note which it was to replace, so that the new note could be collected from the maker, it was not error to sustain an objection to a question on cross-examination, "Why did you write this letter then saying if he would get a new note that you would sign it?"   p. 414.

5. BILLS AND NOTES.—*Negotiable Note.*—*Indorsement.*—*Consideration.*—*Liability of Indorser.*—The indorsement of a party other than the payee or the holder of a negotiable instrument requires a valid consideration, whether indorsed before or after delivery, although under the Negotiable Instrument Act (Acts 1913 p. 120, §9089a *et seq.* Burns 1914), every person whose name appears thereon is deemed to have become a party thereto for value; but where the note and the indorsement are one transaction and simultaneous, the consideration for the note is sufficient for the indorsement, whether the indorser is regarded as a guarantor or as a joint maker, and even though the indorser did not know the value of that consideration, but if the indorsement was made after delivery, a new consideration is necessary, unless made pursuant to a prior agreement between the maker and his creditor for such an indorsement.   p. 418.

6. BILLS AND NOTES.—*Negotiable Note.*—*Indorsement.*—*Considera-*

*tion.—Proof by Parol.*—Where one designated by mistake as the payee of a negotiable promissory note indorsed it in blank without consideration, and delivered it to the rightful payee to enable him to collect from the maker, and the rightful payee turned the note over to another, who had full knowledge of the transaction, and such holder afterwards obtained a new note from the maker payable to the payee named in the first note and obtained the payee's indorsement in blank by representing that it was merely to correct the mistake in the old note, the indorser could show, in the holder's action against him on the new note, that his indorsement was without consideration and that he was not liable, although §63 of the Uniform Negotiable Instruments Act (Acts 1913 p. 120, §9089a *et seq.* Burns 1914) provides that a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. p. 418.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

. Action by Neil Sangster against Benjamin F. Bricker. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Truman F. Palmer, Benjamin F. Carr, U. S. Lesh* and *Eben Lesh,* for appellant.

*John Q. Cline, Claude Cline* and *Charles W. Watkins,* for appellee.

·IBACH, C. J.—Action by appellant against appellee on a promissory note executed by Joseph L. Dvorak and Barbara C. Dvorak, hereinafter referred to as the Dvoraks, and indorsed by appellee. The complaint is in two paragraphs upon which issues were joined by answer: (1) General denial; (2) plea of no consideration; (3) plea of *non est factum;* and (4) an amended special paragraph, to which affirmative paragraphs appellant replied by general denial. There was a trial by jury, verdict and judgment for defendant, appellee.

Numerous errors are assigned, but all are waived by failure to discuss in appellant's brief, except three, viz., the overruling of appellant's demurrer to the amended fourth paragraph of answer; the overruling of his motion for judgment on the answers to interrogatories; and the overruling of his motion for a new trial.

The amended fourth paragraph of answer avers in substance that in December, 1911, one George Sangster of Monticello, Indiana, was the owner of a gray stallion which he desired to ship to Kansas for sale. Knowing that appellee was going to ship three horses to Kansas to sell there, said Sangster requested of appellee permission to send his gray horse with appellee's horses. He was told that there was room in the car if Murdock, appellee's man, would take it along. Sangster placed his horse in charge of Murdock and the four horses were shipped to Kansas. Murdock, acting for and on behalf of Sangster, sold the gray stallion to the Dvoraks and when the sale was made, whether by carelessness, inadvertance, oversight or mistake, in taking the Dvoraks' note had the same made payable to B. F. Bricker, appellee, when in truth and in fact it was not the intention of any of the parties to make the note payable to appellee, as he had no interest in the gray horse, or the sale of him, and the making of the note in such form was wholly without the knowledge or consent of appellee. Afterwards Sangster and his agents came to appellee and admitted that they knew he had nothing to do with the transaction but that he, being the payee in the note, was asked to sign his name on the back so that they could collect from the Dvoraks. Afterwards the said Sangster was about to be prosecuted for forgery and he turned the

note with some property over to Neil Sangster, the appellant. Appellant, discovering that he could not collect the note against appellee, came to appellee and represented that, in order to more effectually collect from Dvorak, a new note should be given, and asked appellee to sign a new note, which he refused to do. Appellant then told appellee that he wanted him to write his name on the back of the note so that he could collect the same from Dvorak, which statement he well knew was false and fraudulent, and that they could collect from Dvorak without such signature. Appellant then said that it was a mistake in taking the old note, and he knew appellee was not liable. His agents and attorneys expressly stated to appellee that it was solely for the purpose of showing a correction of the original mistake and to show legal title in the note in appellant. Appellant, as well, as his agents and attorneys, knew that appellee did not own the horse, did not sell him, nor authorize nor approve the sale, and appellant knew that the original note did not belong to appellee and that he had no interest therein, and when the note now in suit was given appellant knew the history of the whole transaction and that appellee had received no consideration whatever, but that in getting appellee's name on the back of the note was a trick and fraud by appellant and his agent to hold appellee where he was not legally liable. Appellee in good faith believed that they were procuring his signature simply to correct the mistake in the first note, and to enable appellant to collect from the Dvoraks, and not to hold himself liable. The first note given was delivered to Murdock for George Sangster and before appellee wrote his name on it, and, for that reason, they knew appellee was not liable on such

original note and that the note now in suit was given by Dvorak in lieu of the note first given, and that there was no further consideration to appellee for the note in suit. The indorsement was made only for the purpose of correcting the error that was made in making appellee payee in the original note, and appellee did not indorse or sign his name on the back for the purpose of lending his name to it or any other person or to make himself an accommodation indorser on either the first or original note and the note in suit.

1. No memorandum accompanied the demurrer to such answer, and, as this cause was commenced since the amendment of §§344, 348 Burns 1914, Acts 1911 p. 415, the court did not err in overruling such demurrer.

Numerous questions are sought to be presented under the motion for a new trial relating to the admission or exclusion of evidence and to instructions given or refused. In so far as these questions are presented by the brief they will be considered.

2. Appellee, over the objection of appellant, was permitted to testify as follows: "Q. State what directions were given to you in any letters to you in regard to these two notes? * * * A. I had instructions that the first note was made payable to me by mistake to sign my name on the back and turn it over to Dr. Sangster and leave the other one at the Huntington Trust Company for W. H. Murdock." The objection was that the letters themselves were the best evidence, and there was no sufficient reason shown for failure to produce the letters. The record shows that prior to the question objected to, appellee had testified that he did not have the letter, and, after a search in the usual places

where he kept letters, he could not find it and could not produce it. It further appears from the record that Murdock did not keep a copy of the letter. The court did not err in permitting the question to 3. be answered. Furthermore, this evidence was not material as there is other uncontradicted evidence to show that appellee had nothing to do with the Sangster horse, and that the first note was taken in his name by mistake.

It is next claimed that the court erred in sustaining appellee's objection to the following question asked appellee on cross-examination: "Why 4. did you write this letter then saying if he would get a new note that you would sign it?" This witness had already testified that he agreed to indorse the new note the same as the old note was indorsed, so as to enable appellant's agent to collect from the Dvoraks. Such ruling of the court was not erroneous.

It appears from the evidence, and if necessary, it must be presumed that the jury have so found by their general verdict that the indorsement upon which this action is predicated was not contemporaneous with the execution of the note; that the note was first executed by the Dvoraks and delivered to the agent of appellant and by him sent to appellee, who then indorsed the note at the request of appellant's agent and returned the note to him; that the note has not been negotiated and is still in the hands of the original payee, who is not a holder in due course.

The real controversy in this case seems to be a question of law rather than of fact. Appellant contends in effect that an indorsement of a negotiable instrument in the manner and under the circum-

,stances shown by the evidence is to be construed as a strict indorsement and cannot be explained by parol evidence.

The note in suit is governed by our Uniform Negotiable Instruments Act (Acts 1913 p. 120, §9089a *et seq.* Burns 1914) which contains, among others, the following provisions: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity" (§63); and "If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee." §64. "Absence or failure of consideration is a matter of defense as against any person not a holder in due course." §28. "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." §58. "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That the instrument is complete and regular upon its face; * * * 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." §52. "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person." §29.

While, as before stated, this note is governed by the Uniform Negotiable Instruments Act, *supra,* we may look to the former law in giving it application. It has been held that: "The law imports into the endorsement of a promissory note governed by the

law merchant, a contract which, as a general rule, cannot be contradicted by parol evidence." *Moorman* v. *Wood* (1889), 117 Ind. 144, 148, 19 N. E. 739, and cases cited.

The reason for so holding is that, when the legal import of a contract is clear and definite, the intention of the parties is, for all substantial purposes as distinctly and fully expressed, as if they had written out in words what the law implies and, though the writing consists only of a signature, as in the case of an indorsement in blank, yet where the law attaches to it a clear, unequivocal and definite import, the contract imported by it can no more be varied or contradicted by evidence of a contemporaneous parol agreement than if the whole contract had been fully written out in words. We do not question the correctness of the general rule, or the reasoning which led to its adoption, but it has no application to an indorsement such as we have here. *Stack* v. *Beach* (1881), 74 Ind. 571, 574, 39 Am. Rep. 113; *Vore* v. *Hurst* (1859), 13 Ind. 551, 556, 74 Am. Dec. 269.

In the case first cited the court used this language: "The endorsement of a note or bill, not previously endorsed or not endorsed at all by the payee, is an irregular proceeding, and the contract created by it is not one of fixed and definite legal import." In *Vore* v. *Hurst, supra,* the court upon this question said: "When a name is placed in blank upon the back of a negotiable note, by a third party, while it is in the hands of the payee, thereby creating a liability in favor of the payee, there is no indorsement strictly, because the note, although negotiable, has not been negotiated. Now, when an indorsement is thus made in blank upon a negotiable note, inuring to the benefit of the payee, unconnected with any

transfer of the note, the liability intended to be created by the indorsement does not conclusively appear, (and)   *   *   *   in accordance with the decisions of this court, heretofore made, it not being conclusively presumed that such liability only was intended to be created, the contract may be said 'to be ambiguous.  It is taken for granted that some kind of liability was intended.  If the liability intended were written out upon the note, that, of course, would govern.  But it not being written out, thereby leaving it uncertain whether the liability of an indorser, guarantor, or maker, was intended, the law permits parol proof to show what was the real intention of the parties, and will hold them responsible accordingly.''

In the case of *Houck* v. *Graham* (1886), 106 Ind. 195, 198, 6 N. E. 594, 55 Am. Rep. 727, the court said: ''Very many authorities are cited by counsel to prove that the endorsement of a note cannot be so explained by parol evidence as to show that the liability assumed was that of maker or surety.  These authorities would be in point if the endorsement had been regular, and if the controversy were between the holder of the note and the parties liable upon it; but they are not in point here, where the controversy is between the parties liable upon the note and the endorsement is an irregular one.   *   *   * the point upon which this case turns is whether the relation between those liable on the note may, as between themselves and in respect to such an endorsement as that made by the appellees, be shown by parol evidence.  The general rule undoubtedly is that the relation of the parties liable upon a promis-

sory note to each other may be shown by oral testimony," citing numerous authorities.

The indorsement of a party other than the payee or the holder of a negotiable instrument requires a valid consideration, whether indorsed after or before delivery, although under the Negotiable Instruments Act, *supra,* every person whose signature appears thereon is deemed to have become a party thereto for value. But where the note and the indorsement are one transaction and simultaneous, the consideration for the note is sufficient for the indorsement, whether the indorser is regarded as a guarantor or as a joint maker, and even though the indorser did not know the nature of that consideration. On the other hand, if the indorsement was made after delivery, a new consideration is necessary unless made pursuant to a prior agreement between the maker and his creditor for such an indorsement. 8 C. J. 250, §392, and cases cited in note; *Favorite* v. *Stidham* (1882), 84 Ind. 423; *Wipperman* v. *Hardy* (1896), 17 Ind. App. 142, 46 N. E. 537; *Crossan* v. *May* (1879), 68 Ind. 242; *Davidson* v. *King* (1875), 51 Ind. 224; *Eitel* v. *Farr* (1914), 178 Mo. App. 367, 165 S. W. 1191, and cases cited.

Under the rules above announced appellee was entitled to prove by parol evidence that his indorsement was without consideration, and the jury were warranted in finding from the evidence that the execution of the note and the indorsement were not one transaction and simultaneous. On the other hand, the evidence is not such as to require us to say as a matter of law that appellee ever agreed to become liable to appellant upon his indorsement. The evidence is without conflict that appellee agreed

to indorse the new note in the same way that he indorsed the old, which was merely for the purpose of correcting a mistake, and that he absolutely refused to become a joint maker or sign the face of the note; that he indorsed the note as requested by appellant's agent ''so that he could collect from the other party.'' It is not even claimed by appellant that there was any new consideration for the indorsement.

It is claimed that the court erred in refusing certain instructions requested by appellant. Without considering them separately, it is sufficient to state that these instructions proceed upon the theory that appellee was a regular indorser, and that his obligation was fixed by his indorsement in blank, and that it could not be inquired into even as between the original parties. Most of them for such reason were not applicable to the facts as shown by the evidence, and others, in view of the uncontradicted evidence, even if erroneously refused, would not warrant a reversal.

The interrogatories and answers are not in irreconcilable conflict with the general verdict, but are in support thereof.

Other questions are discussed, but they are not of controlling importance. The case seems to have been fairly tried and a correct result reached. Judgment affirmed.

NOTE.—Reported in 118 N. E. 383. See under (5) 8 C. J. 250.