[No. 27562. Department Two. September 8, 1939.]

MARION DITTMAR, *Respondent,* v. CHARLES H. FRYE, *Appellant.*[1]

[1]Reported in 93 P. (2d) 709.

*Eggerman & Rosling, Walser S. Greathouse,* and *Joseph J. Lanza,* for appellant.

*Todd, Holman & Sprague, William M. Allen,* and *Lowell P. Mickelwait,* for respondent.

MILLARD, J.—Emma Frye and Augusta Frye were sisters. Charles H. Frye, president of Frye & Company corporation, and Frank F. Frye, an employee of that corporation after sale of his interest therein to Charles H. Frye, were brothers. Emma Frye, who died in February, 1934, was the wife of Charles H. Frye. Augusta Frye, who died October 20, 1937, was the wife of Frank F. Frye, who died in November, 1935.

Emma Frye signed, as maker, a promissory note dated October 31, 1930, in the amount of forty thousand dollars, payable ninety days after notice of demand for payment to the order of Augusta Frye. On February 11, 1931, the following endorsement was written by Charles H. Frye on the back of the note:

"As of Feby 11th 1931 .
"Chas. H. Frye."

After the death in 1934 of Emma Frye (maker of the note), demand for payment was made by Augusta Frye upon Charles H. Frye, as executor of his deceased wife's estate. A claim in that estate was duly filed and allowed. In October, 1936, the note was unpaid, whereupon the attorneys representing Augusta Frye, who was then alive, wrote the following letter to the attorneys representing Charles H. Frye:

"Eggerman & Rosling October 9, 1936
1824 Exchange Building,
Seattle, Washington.
Attention: Mr. Greathouse.
Gentlemen:
"You are familiar with the fact that our client Augusta Frye is the owner and holder of a certain

promissory note dated October 31, 1930, in the principal amount of $40,000, with interest, and that as Executrix of the Estate of Frank F. Frye, deceased, she is likewise the owner and holder of a promissory note of the same date for $60,000, with interest. Both of the above notes were signed by Emma Frye as maker, were endorsed by Charles H. Frye, personally, and were payable ninety days after notice of demand for payment. Although claims based upon these notes have been filed in the probate proceedings of the Estate of Emma Frye, deceased, and were recently allowed, the notes remain unpaid.

"In order to avoid any contention by Mr. Frye that after October 31, 1936, the Statute of Limitations will serve as a bar to his individual liability as a endorser on these notes, we request that you cause the enclosed forms of acknowledgment of debt to be signed by Mr. Frye and returned to us.

"In the event that these acknowledgments of debt are not executed and returned to us by October 20, 1936, it will then be necessary for us to institute actions against Mr. Frye, individually, to enforce collection on these notes. Yours very truly,

TODD, HOLMAN & SPRAGUE."

One of the attorneys representing Augusta Frye testified that, shortly after the foregoing letter was written, he had a conversation by telephone with one of the attorneys representing Charles H. Frye respecting the consequences that would ensue if Mr. Frye refused to sign the requested letter of acknowledgment; that Mr. Frye's counsel was informed action would be brought, as stated in the letter, in the event of Mr. Frye's failure to sign the acknowledgment; that, if Mr. Frye signed and returned the requested letter of acknowledgment, "we will not bring suit for a while."

The opposing attorney admitted that a telephone conversation was had concerning the letter, but he could not recall any conversation like that remem-

bered by Mrs. Frye's attorney. Both attorneys testified, however, that, subsequent to the telephone conversation and prior to October 21, 1936, Mr. Frye's attorney was granted permission to examine the note which he conceded was endorsed by Charles H. Frye. On or about October 21, 1936, the requested letter of acknowledgment, signed by Mr. Frye, was delivered to Mrs. Frye's attorneys. That letter, in which Mr. Frye wrote the amount of interest paid on the note, reads as follows:

"Mrs. Augusta Frye October 21, 1936
c/o Todd, Holman & Sprague
1006 Hoge Building
Seattle, Washington
Dear Madam:

"You are the owner and holder of a certain promissory note signed by Emma Frye as maker, dated October 31, 1930, for the principal sum of $40,000, and payable ninety days after notice of demand for payment.

"For value received I endorsed the above promissory note. You have requested my acknowledgment of my liability as endorser of this note in order to avoid the bar of the Statute of Limitations.

"Please be advised that I hereby acknowledge my personal liability as endorser of said note and agree to pay the same.

"There is now due and owing on said note the principal sum of $40,000, together with interest thereon at the rate of 6% per annum from November 1, 1933, less the sum of $4,154.40 paid upon accrued interest since January 27, 1936. Very truly yours,

CHARLES H. FRYE
Individually."

The next step to enforce the liability of Charles H. Frye as an endorser was service upon him May 14, 1937, of summons and complaint, which were not filed, in action by Augusta Frye against Charles H. Frye to recover upon the note in question. Nothing further was done until April, 1938, when summons and com-

plaint in this action by Seattle First National Bank, as executor of the estate of Augusta Frye, deceased (Mrs. Frye died October 30, 1937), to recover upon the note against Charles H. Frye, were filed. The affirmative defenses were that no consideration passed to Charles H. Frye for his endorsement, which was placed on the note subsequent to its execution and delivery, and absence of consideration for the letter of October 21, 1936, in which defendant Frye acknowledged his personal liability as endorser and agreed to pay the note. Upon the grounds that "it was either incompetent or not material," or that the defendant was estopped by his letter of October 21, 1936, from urging such defense, the trial court excluded evidence of lack of consideration for the endorsement and directed a verdict in favor of the plaintiff. From the judgment entered on that verdict, the defendant appealed.

Subsequent to the appeal, a decree was entered distributing, and respondent executed an assignment transferring, the judgment to Marion Dittmar. Pursuant to stipulation and motion of the appellant and the respondent, we have entered an order substituting Marion Dittmar herein as respondent in place of the Seattle-First National Bank.

Appellant contends that he should have been permitted to show that his indorsement upon the note subsequent to its execution and delivery was without consideration, hence not binding; that, as the endorsement was invalid, his letter of October 21, 1936, acknowledging personal liability as endorser of the note and promising to pay same, was, also, without binding effect in the absence of a new and independent consideration; and that "it is no consideration to delay bringing action on an endorsement that is ineffectual, in any event."

The trial court refused appellant's offer to prove by his own testimony and by entries in the books kept for appellant and his deceased wife that appellant did not receive anything for his endorsement, that all of the money received from Augusta Frye in this transaction was placed to the credit of Emma Frye, and that none of the borrowed money was ever received by appellant. Appellant was not permitted to testify that Frank F. Frye, acting for Augusta Frye, took the note February 11, 1931, after execution and delivery of same by Emma Frye October 31, 1930, to the office of appellant, who, on request of Frank F. Frye, signed the note at that time. The court also rejected appellant's offer to show by his own testimony the relations between the parties, that the loans were not made to each other on a commercial basis, but were made as one member to another member of the family at a low rate of interest and

". . . that the borrowing of this money was made at the behest of Emma Frye, who had always been on close and intimate terms with her brother-in-law and sister up to that time, and who was concerned about Mr. Frank Frye's health and who asked Mr. Charles Frye to see if some arrangement could not be made to handle this money, and that Emma Frye individually agreed to the handling of the money and gave her note to Augusta Frye and executed a mortgage to secure the indebtedness; that Mr. Charles H. Frye received nothing for his endorsement on the note, the endorsement being made at the request of Frank Frye acting for Augusta Frye just previous to a trip that Mr. Frye made on business back east, and at a time subsequent to the original delivery of the note; that Frank Frye brought the note in and asked Mr. Charles H. Frye to endorse it, which he did, writing on there 'As of February 11, 1931'; that the transaction was throughout primarily for the accommodation of Augusta Frye under the circumstances I have stated."

■ A person whose signature appears upon a promissory note is presumed to have become a party to the note for value. Such person has the burden of establishing lack of consideration, even if he signed the note after its execution and delivery.

"Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Rem. Rev. Stat., § 3415 [P. C. § 4095].

"Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise." Rem. Rev. Stat., § 3419 [P. C. § 4099].

In *State Bank of Clarkston v. Morrison*, 85 Wash. 182, 147 Pac. 875, the defendant appellant endorsed the note in controversy subsequent to its execution and delivery. In holding that the fact that the defendant endorsed the note imports value to support his endorsement and that the burden of overcoming the presumption of consideration was upon the defendant, we said:

"It was conceded at the trial that the appellant had endorsed this note. . . .

"It is plain, under this statute [Ch. 149 L. 1899, § 24], that it was not necessary for the plaintiff to prove that the endorsement was for value. The fact that the appellant endorsed the note imports value and consideration under the statute. The burden, therefore, was upon the appellant to show that the endorsement was without consideration moving either to him or to the makers of the note."

See, also, *Gleason v. Brown*, 129 Wash. 196, 224 Pac. 930, reading as follows:

"The defense of the lack of consideration must be affirmatively pleaded and the burden of proof is upon the one asserting failure of consideration. *State Bank*

of *Clarkston v. Morrison,* 85 Wash. 182, 147 Pac. 875; *Scott v. Bourn,* 13 Wash. 471, 43 Pac. 372; *McKenzie v. Oregon Imp. Co.,* 5 Wash. 409, 31 Pac. 748; *Baker-Boyer Nat. Bank v. Hughson,* 5 Wash. 100, 31 Pac. 423. . . .

"In the case of *Poncin v. Furth,* 15 Wash. 201, 46 Pac. 241, we said:

" 'We are cited to no authority which supports the contention that the rules of evidence are changed when a suit is brought upon negotiable paper against *the legal representative of a deceased person and that "the death of the maker . . . wipes out the presumptions and rules of evidence which control such paper among living persons." ' "*

Particularly pertinent is the following from the opinion in *Greenwood v. Lamson,* 106 Vt. 37, 168 Atl. 915, 917:

"It is a settled and well-recognized rule that a party who signs a note after its execution, delivery, and acceptance is not liable to the payee when there was no new or additional consideration for such signing, either in the form (1) of some advantage to some of the signers, or (2) of some disadvantage to the payee, or (3) of an agreement, at the time of the original execution and delivery, that the note would be so signed. *Persia Sav. Bank v. Wilson,* 214 Iowa, 993, 243 N. W. 581; *King v. Wise* (Tex. Com. App.), 282 S. W. 570. The defendants, by their answer, invoke this rule of law, but they have introduced no evidence to sustain the allegation. They contend that the burden was upon the plaintiff to establish a new consideration. But the argument misconceives the express provisions of the Negotiable Instruments Act. By section 24 of the Act (G. L. 2894) the note is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value, and section 28 of the Act (G. L. 2898) provides that absence or failure of consideration is matter of defense as against any person not a holder in due course. These provisions of the Act expressly cast upon the party asserting absence or failure of consideration the burden of establishing the issue by plead-

ings and proof. *Harponola Company v. Wilson,* 96 Vt. 427, 433, 120 Atl. 895; *Alexander v. Chevalier,* 98 Vt. 230, 233, 126 Atl. 498; *Niles v. Rexford* (decided, October Term, 1933), 105 Vt. 492, 168 Atl. 714. See *Browne v. Fine,* 104 Vt. 221, 228, 158 Atl. 669. Sections 24 and 28 (G. L. 2894 and 2898) do not make any distinction between signers before delivery and signers after delivery. We read them as they are written, and hold that the rule as to burden of proof of the issue of absence or failure of consideration applies with equal force to a person who signs the note after its delivery."

See, also, *Loveland v. Sigel-Campion Live Stock Co.,* 77 Colo. 22, 234 Pac. 168; *Thomas v. Hoebel,* 46 Idaho 744, 271 Pac. 931; *Conner v. Henry,* 205 Iowa 95, 215 N. W. 506; *Nolte v. Nolte,* 211 Iowa 1289, 235 N. W. 483; *Sangster v. Bricker,* 66 Ind. App. 409, 118 N. E. 383.

After the introduction of the note in evidence, the burden rested upon appellant to rebut the presumption that his endorsement was made for a valuable consideration. *State Bank of Clarkston v. Morrison, supra; Gleason v. Brown, supra.*

"In the first place 'every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value,' though when evidence is introduced tending to show that no consideration was given some courts hold that the ultimate burden of establishing its existence is upon the holder. The great weight of authority under the Negotiable Instruments Law, however, places this burden on the defendant." Williston on Contracts (Rev. ed.), 370, 371, § 108.

The burden upon the appellant of showing that his endorsement was without consideration was not sustained by his testimony and other evidence offered by him that he received no money or thing of value for his signature on the back of the note. The presumption of consideration extends to any fact which,

under the situation and circumstances of the parties, might reasonably supply a consideration. The presumption cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind. If at the time the loan was made it was the understanding—that situation not only reasonably may have existed but very probably did exist—that the additional signature of appellant would be obtained, and if it was placed on the note February 11, 1931, by appellant pursuant to the original agreement, that signing related back to the inception of the original contract of October 31, 1930, and no new consideration was necessary.

"The general rule undoubtedly is that one who signs a note after it has been executed and delivered, and after the entire consideration has passed between the original parties thereto, incurs, in the absence of a new consideration, no liability, but if it was the understanding at the time the payee parted with his money that the additional signature would be obtained, and if it was affixed pursuant to the original agreement, such signing relates back to the inception of the original contract and no new consideration is necessary." *Bedrosian v. Der Manouelian*, 48 R. I. 40, 134 Atl. 851.

If the evidence excluded by the court had been admitted, it, together with evidence that was admitted, would only show the fact that appellant did not receive anything for his endorsement. This clearly would be insufficient to sustain the burden imposed upon appellant of showing there was no consideration to support his endorsement, as there was no attempt to negative other kinds of consideration, one of which is suggested above.

In other words, the offers of proof do not negative the possibility that Emma Frye, when she made the note October 31, 1930, promised the payee to obtain Charles H. Frye's signature, and that he signed pur-

suant to such promise when Frank F. Frye, in accordance with the prior agreement, presented the note to appellant with request for endorsement. It follows that the error, if any, in rejecting appellant's offers of proof was not prejudicial.

*Drake v. Seck,* 116 Kan. 717, 229 Pac. 67, was an action to recover on promissory notes against the administratrix of the estate of the deceased maker of the notes. The trial court directed a verdict for the plaintiff. In affirming the judgment, on appeal of defendant, the supreme court of Kansas said, respecting the defense of want of consideration:

"A second defense was want of consideration. The administratrix testified, over objection, as follows:

" 'That upon being appointed administratrix she took possession of the property and papers of her deceased husband; that as such administratrix she was familiar with the assets of her said husband's estate at the time of his death; that she took possession of deceased's bank book and bank account, and examined his accounts and his business, and that she did not find where he had received any money or consideration, or any evidence of his having received any consideration for the notes sued on; that she knew no consideration was received by her husband for said notes; that she was in a position at the time that she would have known if her husband had received any consideration for the notes sued on, and that she didn't know of her husband receiving any consideration therefor.'

"The witness also offered to testify that she knew the source from which the property coming to her possession as administratrix was derived, and none of it which deceased owned subsequent to the date of the note came as consideration for execution of the notes. The offer was refused. What probative force did the testimony offered and admitted have?

"The statement that the administratrix was in a position to know and knew there was no consideration for the notes, was mere opinion and conclusion of the

witness. It arbitrarily leaped over facts warranting the conclusion, and dictated to the jury what it should find. When the court was called on to determine whether there was any evidence to go to the jury, it was obliged to disregard the statement, because it would have been obliged to set aside a verdict based on the statement. The evidence therefore reduced to this: The administratrix, being in possession of decedent's books, papers, and property, discovered nothing for which the notes might have been given. But there were the notes, importing a consideration (R. S. 16-107), deemed *prima facie* to have been executed for a valuable consideration (R. S. 52-301), and containing the maker's written declaration that they were given for value received.

"Want of consideration is not a mere burden-shifter, but is an affirmative defense (R. S. 16-108), which must be established by a preponderance of the evidence in order to defeat recovery. (*Fuller v. Scott*, 8 Kan. 25.) The presumption of consideration is not a presumption of law; it is a presumption of fact. It extends to any fact which, under the situation and circumstances of the parties, might reasonably supply a consideration, and it cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind. Consideration may arise in various ways, and proof of absence of one kind does not necessarily disprove presence of another kind. The fact that the deceased had no property which might have been purchased by the notes was no proof he did not receive cash. The fact that his bank books showed no deposit of money, and that his accounts showed no payment of debts contemporaneously with execution of the notes, was no proof that the notes were not given in renewal of other maturing notes. The notes may have been given to discharge the maker's obligation as surety, or indorser for another, in which event his books, papers and estate would not reveal consideration moving to him. There was testimony that the notes were in fact given to take the place of other notes of the decedent which were surrendered to him. Ignoring the testimony, such a transaction

was embraced within the presumption, and the evidence offered and introduced was wholly insufficient to affect weight of the presumption."

To the same effect is *American Nat. Bank v. Woolard,* 342 Ill. 148, 173 N. E. 787, which was an action on a promissory note. The court held that defendant's testimony regarding lack of consideration based upon information defendant obtained in conversation with deceased president of payee corporation was inadmissible; that, in absence of evidence on which jury could reasonably find in favor of party holding affirmative of issue, verdict should be directed; and that presumption of consideration for note cannot be overthrown except by proof of facts warranting inference of no consideration of any kind. The court said:

"In the absence of evidence on which a jury could in the eye of the law reasonably find in favor of the party holding the affirmative of an issue, a motion to direct a verdict against the party so holding the affirmative should be allowed. Evidence sufficient to defeat such a motion must be evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the party so having the affirmative. (*Offutt v. Columbian Exposition,* 175 Ill. 472.) The issue presented by the present case is therefore whether, upon the evidence relied upon by plaintiffs in error, a jury could, without acting unreasonably in the eye of the law, decide in their favor.

"In dealing with this issue it is essential to keep in mind that 'value,' as employed in the section of the Negotiable Instruments law, which prescribes that every person whose signature appears upon a negotiable instrument is deemed *prima facie* to have become a party thereto for value, is any consideration sufficient to support a simple contract, and that even an antecedent or pre-existing claim, whether for money or not, constitutes value where an instrument is taken either in satisfaction therefor or as security therefor, and is deemed such whether the instrument is payable on demand or at a future time. . . .

"In *Drake v. Seck,* 116 Kan. 717, 229 Pac. 67, where in a proceeding to recover on certain promissory notes a directed verdict for plaintiff was upheld, the court aptly said: 'The statement that the administratrix was in a position to know, and knew there was no consideration for the notes was mere opinion and conclusion of the witness. It arbitrarily leaped over facts warranting the conclusion and dictated to the jury what it should find. . . . The presumption of consideration is not a presumption of law—it is a presumption of fact. It extends to any fact which under the situation and circumstances of the parties might reasonably supply a consideration, and it cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind. Consideration may arise in various ways, and proof of absence of one kind does not necessarily disprove presence of another kind.' This language is fairly applicable to the present record. Granting that plaintiffs in error made a sufficient showing that they received no money, no facts are disclosed warranting the inference of no consideration of other kinds equally lawful and equally adequate. To find that plaintiffs in error by proving absence of one possible kind of consideration have thereby proved that there was no consideration would obviously be to act unreasonably in the eye of the law. The motion of defendant in error for a directed verdict should have been allowed, and the judgment of the Appellate Court was proper."

 Appellant was not competent, under Rem. Rev. Stat., § 1211 [P. C. § 7722], to testify regarding the transactions with Augusta Frye, who was not alive at the time of the trial of this action.

". . . in an action . . . where the adverse party sues or defends as . . . legal representative of any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased . . . person . . ." Rem. Rev. Stat., § 1211.

"Death has sealed the lips of one of the parties and the statute imposes the same silence upon the other. The prohibition of the statute is absolute and unconditional. It admits of no qualification or exception, and it is not the province of this court to add to it or take from it. We are satisfied, therefore, that the court below correctly ruled that the appellant was not competent to testify to any transaction had with or statement made by the deceased, regardless of the testimony that may have been given by other witnesses." *O'Connor v. Slatter*, 48 Wash. 493, 93 Pac. 1078.

See, also, *Jones v. Peabody*, 182 Wash. 148, 45 P. (2d) 915, 100 A. L. R. 64; *Ulbright v. Hageman*, 181 Wash. 706, 44 P. (2d) 196.

All that remains of the offers of proof are the books of Emma Frye and the appellant, which show that the money advanced by Augusta Frye on the note was received by Emma Frye and not by appellant; and that the books record the obligation as that of Emma Frye solely. There would be the evidence by appellant's secretary that Frank F. Frye brought the note to Charles H. Frye, who, at request of Frank F. Frye, signed the note February 11, 1931. This secretary of appellant would also have testified respecting the book entries above described.

As stated earlier in this opinion, the appellant's offers of proof and the evidence introduced on the issue of consideration were insufficient to affect weight of the statutory (Rem. Rev. Stat., § 3415) presumption that appellant was a party to the note for value. If a new trial were had, either with or without a jury, on the evidence admitted and the excluded evidence offered by appellant, it would be the duty of the trial court to sustain motion by respondent for a directed verdict or judgment in respondent's favor, appellant having failed to sustain his defense of no consideration.

Counsel for Augusta Frye advised appellant

by letter of October 9, 1936, that his failure to accede, by October 20, 1936, to her demand that he acknowledge in writing his personal liability as an endorser of the note of which his wife was maker, would result in institution of action against him individually to enforce collection on the note. The letter of acknowledgment dated October 21, 1936, prepared by Augusta Frye's attorneys, was signed and delivered by Mr. Frye to Augusta Frye's attorneys.

It is clear that he signed that letter in contemplation of forbearance on the part of the payee of the note. His acknowledgment of his liability and his promise to pay the note constituted a request that the payee forbear to sue. In reliance upon his letter, there was actual forbearance for a substantial period of time. More than six months elapsed before Augusta Frye served complaint on appellant. Not until nearly eleven months thereafter, or seventeen months after appellant signed the letter of acknowledgment, was the action commenced to enforce collection on the note. The letter of October 21, 1936, was an independent contract supported by a valid consideration—forbearance to prosecute a claim on which Augusta Frye had a right to sue.

"It is enough if it is to be inferred from the circumstances that there was an implied request for forbearance for a time and that such forbearance was in fact extended in compliance with the request." *McDonald Bros. Co. v. Koltes*, 155 Minn. 24, 192 N. W. 109.

See, also, *Galena Nat. Bank v. Ripley*, 55 Wash. 615, 104 Pac. 807, 26 L. R. A. (N. S.) 993.

The judgment is affirmed.

BLAKE, C. J., ROBINSON, GERAGHTY, and SIMPSON, JJ., concur.