K. R. LONG v. J. J. CONN, AS EXECUTOR OF THE ESTATE OF R. A. GRAVES, DECEASED.[1]

October 22, 1920.

No. 21,923.

**Question for jury.**
    1. It is a general rule of evidence that where the testimony tends in any reasonable degree to establish the probability or improbability of the fact at issue, it should go to the jury.

**Bills and notes — want of consideration.**
    2. In an action to recover upon a promissory note where the answer alleges want of consideration as a defense, evidence considered and *held* sufficient to warrant the submission of that issue to the jury.

**Same—burden of proof of want of consideration on defendant.**
    3. The presumption is that a promissory note is a valid obligation based upon a good and legal consideration, and the burden of showing that there was a want of consideration rests upon the defendant.

After the former appeal reported in 142 Minn. 502, 172 N. W. 958, the case was tried before Flaherty, J., and a jury which returned a verdict against the appellant. From an order denying his motion for a new trial, K. R. Long appealed. Affirmed.

*Murphy & Anderson,* for appellant.

*Ray G. Farrington* and *Charles E. Chrisman,* for respondent.

QUINN, J.

Action to recover the amount of a promissory note for $1,000, from the estate of R. A. Graves, deceased. The note bears date April 10, 1914, payable to K. R. Long, or order, on demand for value received, with interest at 7 per cent per annum, payable annually. It purports to have been signed by decedent, R. A. Graves. The answer denies that Graves

[1]Reported in 179 N. W. 644.

ever signed or executed the note, and, as a further defense thereto, alleges want of consideration.

The evidence shows, as the trial court instructed the jury, that the signature to the note was that of decedent, R. A. Graves. It also shows that, prior to coming to Minnesota in 1902, Graves resided in the state of Iowa with his family; that upon arriving in Minnesota he settled at Ortonville, in Big Stone county, where he resided until the time of his death in February, 1916. The appellant married one of Graves' daughters in Iowa, and they came to Minnesota in 1903 and settled upon her farm about 10 miles from Ortonville, where they resided until her death in 1913, after which he moved to Ortonville and lived with the Graves family. Five months after the death of Mr. Graves appellant filed the note in question against his estate. It was disallowed by the probate court, an appeal taken to the district court where a verdict was directed in favor of appellant. Upon motion a new trial was granted, an appeal taken to this court and the order granting a new trial affirmed. 142 Minn. 502, 172 N. W. 958. A second trial was thereafter had in the district court and a verdict returned against the appellant. From an order denying his motion for a new trial, this appeal was taken.

The history of this case, leading up to the alleged execution of the note in question, comes very largely from appellant's own story. Upon the last trial he testified, in substance, that at the time of the execution of the note he and his daughter were living in the Graves home at Ortonville; that Mr. and Mrs. Graves, his daughter and he were all present in the dining room when Mr. Graves asked him for a loan of $1,000, to which he assented; that Graves then procured a blank note which appellant filled out for $1,000, and Graves signed it in the presence of his wife and their granddaughter Gladys; that appellant then gave him $1,000 in currency consisting of seven $100 bills, ten $20 bills and ten $10 bills, which he had saved up during the six or seven years prior thereto, and received the note in return therefor. He testified, upon cross-examination, that he worked for the $1,000, saved it up in about five years, during which time he carried deposits in two different banks, but did not deposit the $1,000 in any bank; that he kept it in the trunk in his house on the farm; that he deposited money in the trunk at least once each year, and that he put most of the money there in 1911 and 1912; that there were

mortgages on the farm; that he frequently borrowed money from the banks to pay his bills; that he had a sale in the fall of 1913 and disposed of all his personal property; that during the time he lived with his father-in-law he kept the $1,000 in his bedroom or in his hip pocket, and that he got the $100 bills at the banks, but could not remember particularly any cashier who ever handed him such a bill. He further testified that in December, 1913, he made a trip to Minneapolis, from there went to Mason City, Chicago, Elgin, to his old home at Leaf River, and to Polo, Illinois, visiting relatives, and returned home in March, 1914, during all of which time he carried the $1,000 in his hip pocket; that shortly after he returned Mr. Graves asked him for the money; that he asked him for it three or four times before he let him have it; that Mr. Graves was 72 years old at the time; that Mr. Graves suggested that the note be payable on demand and asked appellant to write out the note because his eyesight was better; that he filled in the note, pushed it over to Mr. Graves who took a pen and signed it; that he never said anything about the note until after the time of Mr. Graves' death, never demanded payment, nor was any interest ever paid thereon.

At the last trial appellant's daughter Gladys was examined as a witness. She testified that she was in the dining room, saw Mr. Graves sign the note and her father deliver him the $1,000 therefor. The daughter was not called as a witness either before the probate court or at the first trial. R. B. Hudson, the judge of probate before whom the hearing on claims was had, was called as a witness on behalf of the respondent; and testified that upon that hearing the appellant testified that there was no one present but himself and Mr. Graves at the time of the signing and execution of the note in question. Mrs. Larson was called by defendant as a witness, and she testified that she was a daughter of R. A. Graves; that she was in probate court at the time of the hearing upon claims, with appellant's daughter Gladys; that, shortly after the appellant had testified, Gladys said to her that she had never seen or heard of the $1,000 note before, and that she was surprised at her father's testimony.

The real question here for determination is whether the proof was sufficient to warrant the trial court in submitting the issue of want of consideration to the jury. No other issue was submitted and we discover

no error in the rulings upon the admissibility of testimony. The negotiable instrument law expressly provides that every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. G. S. 1913, § 5836. And section 5840 provides that want of consideration is a matter of defense. The presumption is that a promissory note is a valid obligation based upon a good and legal consideration, and the burden of showing that there was a want of consideration rests upon the respondent. Durland v. Durland, 153 N. Y. 67, 47 N. E. 42; Wasgatt v. First Nat. Bank of Blue Earth, 117 Minn. 9, 134 N. W. 224, 43 L.R.A.(N.S.) 109, Ann. Cas. 1913D, 416; Baxter v. Brandenburg, 137 Minn. 259, 163 N. W. 516. But such presumption is not conclusive as to consideration and, where the issue of want of consideration is made by the pleadings, the question of consideration may be inquired into.

Was the testimony, when considered as a whole, such as would ordinarily satisfy or convince an unbiased mind of the truth of the charge that there was no consideration given for the note in question? We answer the proposition in the affirmative.

It is a general rule of evidence that where the testimony offered tends in any reasonable degree to establish the probability or improbability of the fact at issue it should go to the jury. 1 Dunnell, Minn. Dig. § 3251; Home Insurance Co. v. Weide, 11 Wall. (U. S.) 438, 20 L. ed. 197; Plumb v. Curtis, 66 Conn. 154, 33 Atl. 998; Moody v. Peirano, 4 Cal. App. 411, 88 Pac. 380. Applying this rule we see no reason why the facts related by appellant were not proper for the jury to consider in arriving at a conclusion. The relation of the parties, decedent's age, circumstances and conditions of life, the appellant's circumstances and his manner of obtaining and caring for the currency which he claims to have furnished decedent, taken together with his usual custom in handling his finances, the fact that the note was never presented for payment, and whether his statements made at different times were consistent, were all matters proper for the jury to consider, and would be so whether respondent offered any direct evidence on the issue as framed or not. While it is true respondent offered no testimony bearing directly upon the question of consideration, we are satisfied that the trial court was not in error in holding that the verdict is supported by the evidence and should not be set aside. The jury saw and heard all the witnesses and

was in the best position to weigh and consider the testimony and to determine the amount of proof to be derived therefrom. The learned trial judge listened to the witnesses upon both trials and appears to have been satisfied with the result, and we find no reversible error in the record.

Affirmed.