## McDONALD BROTHERS COMPANY v. NICK KOLTES, THOMAS KEAVENY AND JOHN SWEDLUND.[1]

February 16, 1923.

No. 23,281.

**Forbearance to enforce payment good consideration for promise of third person to pay.**

1. Forbearance to enforce payment of a demand may be a sufficient consideration to support the promise of a third person to pay the demand, although no express promise of forbearance was made. If it may be inferred from the circumstances that, in compliance with a request therefor, there was forbearance for a reasonable time, consideration is present. The question is one of fact and the inference may be drawn from circumstantial as well as from direct evidence.

**Notes executed by defendants to obtain such forbearance.**

2. The only legitimate inference to be drawn from the evidence is that the defendants executed their notes to the plaintiff to induce it to refrain from enforcing its claim against a corporation in which the defendants were interested and of which they were officers, and to

[1]Reported in 192 N. W. 109.

obtain an extension of time for the payment of the claim by the corporation.

**Rulings on evidence.**
    3.  There were no errors in the rulings on the admission of evidence.

Action in the district court for Traverse county to recover upon four promissory notes. The case was tried before Flaherty, J., who granted plaintiff's motion for a directed verdict in favor of plaintiff for $1,508.89. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Murphy & Anderson,* for appellants.

*George V. McLaughlin* and *Houston & McDonald,* for respondent.


LEES, C.

Action on four promissory notes which defendants had given to plaintiff. The defense was want of consideration. At the close of defendants' case, plaintiff moved for a directed verdict. The motion was granted and defendants have appealed from an order denying their motion in the alternative for judgment or a new trial.

The Tintah Farmers Co-operative Mercantile Company was a corporation conducting a general store at Tintah in this state. Defendants Keaveny, Swedlund and Koltes were respectively president, vice-president, and secretary and treasurer of the corporation. On March 24, 1920, the company owed plaintiff $2,377.11 on a bill for goods purchased. On that day plaintiff's credit man, H. V. Murphy, appeared at the store to collect the bill and met James Sammon, who was managing the business. Keaveny was called to the store and had a conversation with Murphy. Murphy asked him to sign some notes and filled out and left with Sammon notes aggregating $2,300 running to plaintiff. Keaveny did not sign them that day. Sammon gave Murphy the mercantile company's check for $77.11. Four days later Keaveny and Koltes went to the store and signed the notes. Swedlund signed them still later. On April 26 Keaveny sent them to plaintiff by mail. The four notes in suit were among them. We understand from the briefs that, although it was not a

party to the notes, all but these four were paid by the mercantile company. Keaveny wrote three letters to Murphy. In the first, which is dated April 12, 1920, he said:

"We are now trying to make a deal at Nashua to combine with a store at that place and sell enough stock to pay all bills. This, of course, would take care of your account. We are getting a new manager this week, and to do anything at present for a day or so until the new manager gets here would be foolish, so if you will have patience till the end of the week when we will inform you in full."

In the second, dated April 19, he said:

"I have tried since the time you were first here to have all the directors sign those notes but have not succeeded in getting only two so far. * * * Some of the directors who would sign those notes do not own their farms, so my plan is to get some one that is good on them as a signer, otherwise myself and Nick Koltes may as well sign them alone. * * * Mr. Sammons has done one thing that I did not think was right—that was to be owing such a large bill as yours was, and pay nothing on it or say anything about it until the time you came here. * * * Now Mr. Murphy you can see my position. I am trying to keep this thing going, which I know can be done by the work of a good manager, and I will give you my word that the McDonald Bros. bill will be paid in a good satisfactory way to you all, and will send those notes in signed by the end of the week if we only get our own two names on them. * * * Now Mr. Murphy I am not a storekeeper, just a kind of a farmer, but I will say that I never started at anything that did not make good."

In the third, dated April 26, he said:

"Your letter of April 21 received in due time, and in reply will say that I have got two of the directors to sign those notes, which are herewith enclosed. * * * Our new manager took charge April 22. * * * We had him look those notes over and see if it would bother him to pay those as you fixed them out, so he thought the one of April 30 was the only one that would pinch him

as there is rent and Mr. Sammons salary due on that date, so he dated that note back to Nov. 13 and that will give him a chance of a month to get ready for the note of May 20th. I hope this change will not be of any great inconvenience to you or the McDonald Bros."

There was no evidence of an express promise by plaintiff to refrain from enforcing its claim against the company or to extend the time of payment. None of the defendants was indebted to or received anything from plaintiff for signing the notes. There is no dispute about the facts. The question is whether the jury might properly infer from them that there was no consideration for the notes. Defendants' position is that the evidence showed that, without any consideration personal to themselves, they gave their notes as collateral security for the payment of the debt of the mercantile company; that no circumstance of advantage to the company or of disadvantage to plaintiff attended the transaction, and hence the notes were without consideration. They rely on Turle v. Sargent, 63 Minn. 211, 65 N. W. 349, 56 Am. St. 475, and later cases adhering to the doctrine there announced.

The presumption is that the notes were issued for value and that defendants became parties for value, and hence the burden of showing a want of consideration rested upon them. Long v. Conn, 147 Minn. 77, 179 N. W. 644. Much has been said on the subject of forbearance to enforce a legal right as a consideration for a promise and on the sufficiency of an agreement to extend the time of payment of a debt to constitute a consideration for a new obligation. In Bank of Montreal v. Beecher, 133 Minn. 81, 157 N. W. 1070, the decisions of this and other courts are reviewed and the principles generally accepted and applied are clearly stated.

The facts in the case at bar present a phase of the question which seems not to have been present in any of the cases hitherto decided by this court. It is this: May mere forbearance to enforce payment of a demand be a sufficient consideration to support the promise of a third person to pay the demand, even though no promise of forbearance was made? The question should be answered in the affirmative, if we accept the reasoning of the court in such cases as Glegg

v. Bromley, 3 L. R. K. B. Div. (1912) 474; Strong v. Sheffield, 144 N. Y. 392, 39 N. E. 330; and Edgerton v. Weaver, 105 Ill. 43. The doctrine of these cases is that when a creditor asks for payment of his claim, and, in consequence of the request, the debtor either gives security or gets a third person to assume the debt and give his promise to pay it, although there was no promise on the part of the creditor to abstain from suing for the debt, yet if he does abstain for a reasonable time, there is, so to say, an ex post facto consideration for the security, or for the promise of the third person. Otherwise expressed, it is enough if it is to be inferred from the circumstances that there was an implied request for forbearance for a time and that such forbearance was in fact extended in compliance with the request. The question is always one of fact, and the inference may be drawn from circumstantial as well as from direct evidence.

In some cases it has been held that to constitute a sufficient consideration for a promise, there must be a request for forbearance and a promise to forbear. Manter v. Churchill, 127 Mass. 31; Schroyer v. Thompson, 262 Pa. 282, 105 Atl. 274. The reason given is that, unless the creditor promised to forbear, he might sue the debtor whenever he pleased, his mere acceptance of the promise of a third person to pay the debt not being evidence of an agreement to refrain from doing so.

We are of the opinion that such a transaction as there was here is prima facie evidence that the creditor's remedy is suspended until the maturity of the notes given for the original indebtedness. Lundberg v. Northwestern Elev. Co. 42 Minn. 37, 43 N. W. 685. The record is barren of evidence showing that defendants' notes were taken as collateral to the prior debt of the mercantile company. On the contrary, it is clear that they were taken for the pre-existing debt. They were a conditional payment thereof, and, when accepted, the time of payment was postponed until the notes fell due. Combination Steel & Iron Co. v. St. Paul City Ry. Co. 47 Minn. 207, 49 N. W. 744. A promissory note payable at a future date, given by a debtor for a present debt, is valid because the taking of the note is in substance an agreement to suspend the remedy for the debt until the note is due. Leake, Contracts p. 457.

It would seem that the rule should be the same when the note is given by a third person, not as collateral security for the payment of the debt, but as a conditional payment thereof. As in Galbraith v. Clark, 138 Minn. 255, 164 N. W. 902, the defendants were interested in the mercantile company. They were its principal officers. To use Keaveny's own words, he had never started anything that did not make good. They believed it would succeed under new management, but time was needed and they wanted to get it. It is evident that they would not have gotten it if they had not given their notes. Not satisfied with the time the notes were to run, they had the due date of the first one changed to a later date. Keaveny wrote Murphy asking him to be patient and expressed the hope that the payment of the first note at the later date would not inconvenience plaintiff. The circumstances bring the case well within the doctrine of Glegg v. Bromley, supra, and the other cases cited in the same connection. It is sound doctrine, consistent with the understanding of practical business men. Defendants got what they wanted when they gave their notes. The hand of the plaintiff was stayed. It forbore from exercising a present right to enforce payment of its claim against the mercantile company. Its forbearance is clearly referable to defendants' promise to pay. Having accomplished their purpose, defendants should keep the promise contained in their notes.

The foregoing considerations dispose of the principal question involved in the appeal. The other assignments of error relate to rulings on the admission of evidence. Defendants were allowed to make proof of the circumstances attending the execution of the notes. They were not allowed to go at length into the details of the transaction. We fail to see wherein prejudice to their rights resulted. There is really little or no doubt about the circumstances or the situation existing when the notes were given. It is urged that Keaveny was plaintiff's agent to get other signers on the notes and that it was competent to show what he said to Koltes and Swedlund to induce them to sign. We are of a contrary opinion. If Keaveny was the agent of any one, he was the agent of the mercantile company. Moreover, Koltes and Swedlund were allowed to tes-

tify to the circumstances under which they signed the notes and that they signed them at Keaveny's request.

Order affirmed.