# ALBANY NATIONAL BANK OF LARAMIE v. DODGE, ET AL.

## (No. 1569; March 10, 1930; 285 Pac. 790)

For the plaintiff in error there was a brief by *Corthell, McCollough and Corthell*, of Laramie, and oral argument by *M. E. Corthell*.

288

For the defendants in error there was a brief by *G. R. McConnell,* of Laramie, and oral argument by *Mr. McConnell* and *Mr. Alfred M. Pence,* of Laramie.

KIMBALL, Justice.

This suit is by the Albany National Bank against T. B. Dodge, Thomas McGill, H. A. Thompson and C. D. Spalding, as guarantors in writing of two promissory notes made by H. Ralph Hall. Judgment was for defendants,

and the plaintiff brings the case here by proceeding in error.

The written guaranty is in the form of a letter addressed to the plaintiff, and reads as follows:

"We hereby endorse and guarantee payment at maturity of the following described promissory notes, and expressly waive demand of payment, protest and notice of non-payment of said instrument, and consent that the time of payment may be extended without notice to or further assent from us: H. Ralph Hall in favor of First National Bank, Rock River, Wyo., for $3640.00, dated March 10, 1922, payable 180 days after date with interest at 8%. H. Ralph Hall in favor First National Bank, Rock River, Wyo., for $2500.00, dated March 10, 1922, payable 180 days after date with interest at 8%."

The writing is not dated, but other evidence shows it was signed and delivered May 20, 1922. It was signed by the defendants and Lewis C. Butler. Butler who was not sued, is insolvent and a non-resident. Defendant Thompson, a bankrupt, does not appear to have been represented at the trial, and has not been served with summons in error. Defendant Spalding is an officer of the plaintiff for whom he acted in the transactions in question. He was plaintiff's sole witness at the trial. He filed an answer, but made no defense at the trial, and evidently took the position that he was liable on the guaranty if the other defendants were liable. His answer alleged that he signed the guaranty "at the request of the other defendants and on the consideration that all of said defendants should become equally bound thereby." Defendants McGill and Dodge defended on the ground that there was no consideration for the guaranty, and the decision of the District Court was on that ground.

The guaranteed notes, dated March 10, 1922, were made payable to the First National Bank of Rock River, Wyoming, and shortly after their date had been transferred

from the payee to plaintiff by endorsement without recourse. The notes were renewals of notes for an indebtedness that originated in 1920. An understanding of the contentions on the issue of want of consideration requires some reference to transactions in regard to the earlier notes.

The notes for the original indebtedness were made in 1920 by H. Ralph Hall to the Rock River State Bank of Rock River, Wyoming, which hereafter will be called the State Bank. Defendant Spalding was president and L. C. Butler was cashier of the State Bank. The directors were Butler, Felix Atkinson, S. J. Morris, H. Ralph Hall and defendants Spalding, Thompson and McGill. Defendant Dodge was a stockholder, but not a director.

The plaintiff, Albany National Bank, was engaged in the banking business at Laramie, Wyoming. Defendant Spalding, president of the State Bank, was also an officer —at first cashier and later vice-president—of the plaintiff, and acted for plaintiff in the business out of which the suit arose.

The evidence includes many letters that passed between Spalding, as an officer of the plaintiff, and Butler, at first cashier of the State Bank and later vice-president of the First National Bank of Rock River. It is largely from these letters that we learn the facts on which plaintiff relies to show consideration for the guaranty. Butler was not present at the trial and did not testify.

February 12, 1920, Butler, cashier of the State Bank, wrote Spalding, as cashier of the plaintiff, that the State Bank had in view quite a number of good stock loans, and might need some money for a short time. He said that the borrowers liked to have their paper stay in the bank to which they gave it. He expressed the opinion that the bank examiner would "let us (the bank) by with a quite a few excess loans," and asked if the plaintiff would be willing to take the State Bank's certificate of deposit for "ten thousand or so."

February 13, 1920, Spalding wrote Butler this:

"We can, of course, take care of your needs in the matter of surplus loans, either in the way you suggest, or in carrying part of your notes. Personally, I dislike the idea of excessive loans, even if the bank examiner, in a sense, 'shut his eyes to them,' for the reason that we are in a rather awkward position as officers of the bank, if anything should go wrong. I should much prefer to carry these notes here for you, somewhat along the lines I suggested to you in our conversation, or even as straight rediscounts. The maker of the note need not know anything about this for the simple reason that as the notes mature, you can call them in for payment or substitute others for them, so that when payment is made, the notes can be in your hands."

April 13, 1920, Butler sent Spalding two notes, with a letter saying that it was impossible for the State Bank to carry them "as it would put them in the excess loan class." One of these notes was that of H. Ralph Hall for $3500, payable to the State Bank and endorsed in blank by the payee. This note was for the debt which by renewal was later evidenced by the note for $3640, described in the written guaranty.

April 15, 1920, Spalding wrote Butler acknowledging receipt of the two notes and expressing willingness to carry them, but suggesting that the transfer of the notes with blank endorsement would not free the State Bank from liability, and that the notes would still be construed by the bank examiner as excessive loans. He said that "it would be well to have these notes taken in such a way that the bank endorsement does not appear but that the notes be guaranteed by the individual guarantee of some of the directors."

April 16, 1920, Butler replied that he had sent the notes endorsed by the bank, intending at the next directors' meeting to get the directors to sign a blanket guarantee. He said he was anxious to get the notes "out of our

affairs" for it had been his experience that the bank examiner took quite serious exceptions to a director having an excessive loan. He explained that, in case the bank examiner came before the guarantee was signed, he intended to tell the examiner just what he was doing, adding "I got by like this once." He closes his letter thus:

"However, if you think this matter should be attended to immediately, kindly return the notes and I will have Sid and Thompson endorse them as individuals. They are the only ones that I can get ahold of in the near future."

"Sid and Thompson" evidently referred to S. J. Morris and defendant Thompson, directors of the State Bank.

April 20, 1920, Spalding wrote that the two notes then in question were credited to the account of the State Bank, but if the amount was to be drawn against, the plaintiff would exercise the privilege of sending the State Bank an equivalent amount of the plaintiff's notes. He added:

"I think it well, however, at as early a date as possible, to fix up some new notes for these, in such shape that the bank endorsement need not appear, but that the notes be guaranteed by a separate guarantee, signed by the directors mentioned."

June 5, 1920, the plaintiff received from the State Bank the second note of H. Ralph Hall. It was for $2500, payable to the State Bank and transferred to the plaintiff by endorsement. Whether this endorsement was qualified does not clearly appear. Spalding for plaintiff acknowledged receipt of the note, and to cover it sent the State Bank notes of the Cordiner Drug Company for a like amount, and said:

"I will have a form of guarantee drawn up and will send you one to cover the Cordiner notes and a blank, which you can have executed and send to us covering the Hall note."

This Hall note, in the course of its renewal, was later replaced by the note for like amount described in the written guaranty.

October 12, 1920, the Hall note for $3500 became due, and on October 15 it was returned by plaintiff to the State Bank for renewal. It was renewed by a note for $3640, payable to the State Bank, which was endorsed without recourse and forwarded to plaintiff October 16, 1920. The new note was received by plaintiff October 19, 1920, and the amount thereof credited on the account of the State Bank. In his letter of acknowledgment Spalding wrote that he was enclosing "a form of guarantee covering the Hall note, which we would be glad to have you have signed by some of your directors."

December 1, 1920, the Hall note for $2500 became due and was forwarded to the State Bank by Spalding who wrote that it could be replaced by a similar note of Mr. Hall's for like amount. The note was renewed and the new note, payable to the State Bank and by it endorsed without recourse, was forwarded to the plaintiff.

After the transaction last mentioned, the plaintiff has continued to hold the two Hall notes, and renewals thereof, with the qualified endorsement of the payee. When renewals were to be obtained, the matured notes would be sent by plaintiff to the payee bank whose account would be charged with the amount due. The payee bank—the State Bank or, later, as will soon be explained, the First National Bank of Rock River—would obtain new notes, endorse them without recourse, send them to plaintiff and again receive credit for the amount thereof.

Mr. Spalding for the plaintiff continued to insist that the Hall notes should be guaranteed by some of the directors of the State Bank. Thus, April 9, 1921, when the $3640 note had just been renewed by the procedure above described, Spalding wrote Butler acknowledging receipt of the new note, and saying:

"In this connection, I should like to call your attention to the fact that we have never had any Director's Guarantee on any of the paper, which we hold, although it is signed without recourse by the bank. The National Bank Examiner is just completing his visit to us and I have been severely criticised on this account. I trust you will see that this is fixed up at once as I have promised the Examiner it would be."

April 25, 1921, Spalding wrote Butler asking that the guarantee covering the Hall note be sent, "if you have it ready." Again, on June 2, 1921, a letter from Spalding to Butler, contained this inquiry: "By the way, have you ever secured a directors' guarantee for the paper which we are already carrying?"

June 3, 1921, Butler wrote Spalding thus:

"I have a guarantee going around the directors now, but have not got it back. As you know, Sid is in Casper, and the rest are scattered over the country, so it is hard to do anything quickly. However, I will rush this up all I can."

Butler, however, never procured the guaranty, and there was no evidence that he, or any one else for the State Bank, ever requested any of the directors to give a guaranty. And, except by requests of Butler, Spalding made no effort to obtain a guaranty until some time after the State Bank went out of business.

June 27, 1921, the assets and business of the State Bank were taken over by the First National Bank of Rock River, Wyoming (hereinafter called the First National Bank), and the State Bank then ceased to do business. There is some question whether this transaction was technically a consolidation, but we shall call it that. Before the consolidation, both the State Bank and the First National Bank had accounts with the plaintiff, and on the consolidation these accounts were merged and thereafter became the account of the First National Bank. At the time of the merger, the account of the State Bank was overdrawn in

the sum of $8227, and included a credit for the last previous renewals of the Hall notes. Upon the consolidation, Butler became vice-president of the First National Bank. All defendants were stockholders. Spalding was not an officer. Thompson was a director from 1921 to 1923; McGill in 1921, but not in 1922; Dodge in 1922, but not in 1921.

In the negotiations in regard to the consolidation of the two Rock River banks no particular attention was given to the Hall notes which, with the State Bank's qualified endorsement, were then in possession of the plaintiff. Thereafter, when the notes became due, they were renewed by Butler as theretofore, but made payable to the First National Bank, endorsed by it without recourse and sent to plaintiff. The first transaction of that kind was in July, 1921. When the note then due was sent by plaintiff to the First National Bank for renewal with notice that the amount due had been charged to it, Butler promptly objected, writing:

"It is impossible for us to permit you to charge this note to the account of the First National Bank of Rock River, as this would make us an excess loan, which as you know, cannot be permitted."

Butler demanded that the note be credited immediately on the account of the First National Bank. It was so credited. A few days later Butler sent plaintiff the new note, the receipt of which Spalding on August 3, 1921, acknowledged, saying:

"I am in receipt of your letter of the 1st., enclosing renewal of the Hall note. We are willing to take this again for you, but would like very much to have a directors' guarantee of this sent us. I have advised our Board, at the time the paper was first taken that you were having a guarantee prepared and would send it in, but we have never gotten this and I do not feel that the matter should be allowed to drag indefinitely."

In March, 1922, the two Hall notes were renewed by the notes described in the written guaranty. Spalding then, on March 20, 1922, wrote Butler as follows:

"I am in receipt of your letter of the 18th, enclosing the Ralph Hall notes for $3640.00 and $2500.00, in renewal of similar notes, which we now hold. However, as I have written you before, we have never received your Director's guarantee of these notes and our Board positively refuses to carry these longer without this guarantee.

"At the time the notes were taken over from you, you will remember, it was understood this guarantee would be given and the notes were taken upon this understanding.

"We are expecting a Bank Examiner almost any day now and unless the Directors guarantee reaches us shortly, we shall be compelled to charge the old notes to your account and return them to you.

"I shall be glad to have you take this matter up with your Directors, showing them this letter, and if necessary, I will come to Rock River when they have a meeting and see them."

The plaintiff seems to have received no reply to this last letter, and on April 3, 1922, it charged the amount of the notes to the First National Bank, and returned the notes. April 4 Butler sent the notes back to plaintiff with a letter suggesting a meeting of Mr. Spalding with the directors of the First National Bank, and adding:

"However, I want it distinctly understood that these notes are not chargeable to our account, and we refuse to acknowledge the charge. The First National Bank of Rock River never negotiated these loans, and while we are going to stay with you, and I am doing my best, however, this amount would make us an excess loan, as we are now carrying all we can, which is $6,000,00."

For some days each bank on receiving the notes promptly returned them to the other bank, until finally it was decided that the matter of difference should be considered at a meeting of Spalding with the board of directors of the First National Bank. The meeting was had May 9, 1922. Spald-

ing explained to the directors the history of the indebtedness, and requested the board to sign a guaranty. The directors took the position that the bank was not obligated on the notes, and flatly refused to sign a guaranty or to assume any liability whatsoever.

It was then decided to have a meeting of the directors of the State Bank. This meeting was held May 20, 1922. All defendants were present. The evidence as to what was said at this meeting is conflicting. Spalding, testifying for plaintiff, says that he gave the history of the indebtedness, told of Butler's promise to furnish a guaranty, and explained that the bank examiner on his visits to the plaintiff bank had repeatedly objected to the notes being carried without security. Spalding insisted that the guaranty be signed by those present, he agreeing that if the others would sign he would sign with them. He did not testify that he promised anything on behalf of the plaintiff, nor that defendants made any request that plaintiff do or refrain from doing anything. Spalding, as the representative of the plaintiff, was evidently appealing to the others as directors of the State Bank, on the ground that they, as well as he himself, were morally obligated to relieve the plaintiff from its embarrassment in a situation that had resulted from a transaction beneficial to the State Bank. Defendants McGill and Dodge testified that Spalding stressed the objections made by the bank examiner, and requested the guaranty as a matter of form for the purpose of avoiding future objections. The guaranty was signed and delivered to Spalding for plaintiff. Some days later, on June 6, 1922, the account of the First National Bank with plaintiff was again credited with the amount of the Hall notes, and thereafter plaintiff continued to hold the notes and their renewals until finally the last renewal notes became due and this suit was brought.

In plaintiff's brief it is suggested that the consideration for the guaranty may have been ''the original consideration passing at the time of the acceptance of the original notes by plaintiff, and the subsequent ratification of the contract

by the defendants.'' The suggestion is not amplified by argument or citation of authorities. It may be intended as an invitation to apply the principle of those cases holding that a promise of a surety or guarantor, though made subsequent to the principal contract, is supported by sufficient consideration if it carries out the promise of the debtor by which the principal contract was induced. See, Williston on Contracts, Sec. 1874. The brief also suggests that the consideration may have been the ''forbearance on part of plaintiff to sue defendants for their liability arising out of the transfer of all the property of the Rock River State Bank.''

Neither of the foregoing suggested theories of consideration was advanced by the plaintiff at the trial. The original petition contained no reference to transactions before the making of the notes of March 10, 1922. It was alleged that plaintiff agreed to take the notes from the First National Bank, and advance the amount due thereon, provided the directors of the First National Bank would give a written guaranty of payment; that, thereupon, the said directors, including the defendants, executed and delivered to plaintiff the guaranty, and that, in consideration therefor, the plaintiff did pay the said First National Bank the amounts due on said notes. After the evidence had been heard, plaintiff asked and obtained leave to amend its petition to conform to the facts. It then alleged all the transactions from the time of the acceptance by it of the original notes, including the promise of Butler to procure a guaranty and the fact of the consolidation of the two banks. It is quite evident that the additional facts were inserted in the amended petition for the purpose of showing the relation of the First National Bank to the guaranteed notes. It was alleged that the notes were, on April 3, 1922, returned and the amount thereof charged to the First National Bank, because the guaranty had not been furnished as promised by Butler. It was then alleged that the defendants executed the guaranty, and ''in consideration of

the execution and delivery of said guaranty, the plaintiff accepted the said notes of H. Ralph Hall last above mentioned, and credited the account of the First National Bank of Rock River with the amounts due thereon.''

Giving the plaintiff's petition a liberal interpretation, and considering it in the light of the evidence and contentions at the trial, it is clear that the only consideration claimed was what the plaintiff did or forbore in its dealings with the First National Bank in reference to Hall notes after the signing of the guaranty. The case was tried and decided on that theory. We need not inquire whether, under the evidence, we might imagine or suppose that defendants had some other motive for their promise.

Before the guaranty was signed, the plaintiff had charged the account of the First National Bank with the amount of the Hall notes, and was insisting that it was not obligated to carry the notes unless they were guaranteed by some one. On June 6, 1922, after receiving the guaranty signed by defendants, plaintiff again credited the amount of the notes on the account of the First National Bank, and thereafter continued to carry them. In other words, plaintiff forbore pressing its claim of a right to hold the First National Bank for the amount of the notes. Was this forbearance consideration of defendants' promise? That is the question presented by the record and argued here, and which we must decide.

The plaintiff's right to pursue the First National Bank on the Hall notes depended on the correctness of these contentions: That plaintiff took the notes bearing the State Bank's qualified endorsement relying on Butler's promise to obtain a guaranty; that Butler's promise was binding on the State Bank, and when the promise was unfulfilled, plaintiff had the right to return the notes and receive back what it had given for them; that, on the consolidation of the State Bank and the First National Bank, the latter became liable on the agreement of the former to furnish a guaranty for the notes, and, as the guaranty was not fur-

nished, the First National Bank was bound to pay plaintiff the amount of the notes when plaintiff elected to refuse to carry them without the guaranty.

It is admitted that the transaction whereby plaintiff acquired the Hall notes was a sale to it of the notes. There is no claim that the transaction should be considered a loan with the notes as collateral. It is also admitted that the Hall notes in the hands of the State Bank were excessive loans forbidden by law.

It is doubtful whether Butler's promise to procure the guaranty was intended to be binding on the State Bank. The notes in the hands of the State Bank were evidence of excessive loans forbidden by law. On the suggestion of Spalding, who was acting for plaintiff and at the same time president of the State Bank, the notes were endorsed without recourse for the expressed purpose of making it appear that the payee bank was no longer liable on them. If this endorsement was the only contract of the State Bank, the purpose to remove from its affairs the excessive loan would have been accomplished. Webb v. Cash, 35 Wyo. 398, 250 Pac. 1. It may be that the contract shown by the without recourse endorsement could not be enlarged by evidence of other promises contained in informal letters. We leave that point open. See Doolittle v. Ferry, 20 Kan. 230, 27 Am. Rep. 166; Citizens Bank v. North End State Bank, 116 Kan. 303, 226 Pac. 998, 35 A. L. R. 1109; Central Met. Bank v. Chippewa etc. Bank, 160 Minn. 129, 199 N. W. 901. If its qualified endorsement did not express the whole of the State Bank's contract in regard to the notes, but it was also bound by Butler's promise to procure a guaranty, and the notes could be forced back on the State Bank as plaintiff contends, the transaction did not in fact accomplish the purpose of removing the excessive loan from the State Bank's affairs, but left that to depend on Butler's keeping of a promise not shown on the bank's books. So construed, the transaction would deceive the bank examiner, and probably, for that reason would be invalid. See Oakes Nat. Bank

v. Farmers' State Bank, 52 N. D. 49, 201 N. W. 696. If the promise of Butler was not made on behalf of the bank, but was his personal promise, the contract did not contemplate a deception as to the true relation of the State Bank to the excessive loan. We suppose we should favor any reasonable construction of the transaction that would avoid an imputation of an intention to deceive the bank examiner and others who might rely on the bank records. The transaction given the interpretation contended for by plaintiff was not only calculated to deceive the bank examiner but also the First National Bank when it took over the assets and business of the State Bank. We may assume that in accordance with a general rule that applies in cases of consolidation or merger of corporations, the First National Bank, after the consolidation, became answerable for the liabilities of the State Bank. See Atlantic etc. R. Co. v. Johnson, 127 Ga. 392, 56 S. E. 482, 11 L. R. A. (N. S.) 1119, and note; Note, 89 Am. St. Rep. 637-639. We are not convinced that this rule can be invoked in favor of plaintiff in the case at bar. It had consented that the notes be transferred to it by endorsement without recourse for the very purpose of making it appear to the bank examiner that the State Bank could not be called on to pay the notes. The First National Bank, in consenting to the consolidation, had no better opportunity for discovering the facts than the examiner had in examining the bank. The evidence, so far as it throws light on the point, tends to show that the First National Bank had no knowledge that the State Bank had made any engagement with reference to the notes other than the warranties incident to a qualified endorsement. When the banks were consolidated, the plaintiff's account with the State Bank showed a considerable overdraft which the First National Bank assumed when the accounts of the consolidating banks were merged. The plaintiff gave no notice that the account included a credit that had been made upon a condition that had not been fulfilled. And when it later did make known that claim, insisting that the

First National Bank guarantee or take back the Hall notes, it seems that the First National Bank could not have complied without violating the law as to excessive loans.

We are of opinion that the First National Bank did not become bound by Butler's promise to obtain a guaranty for the notes in question. Whether that be put on the ground that Butler's promise was not the promise of the State Bank, or on the ground that, under the circumstances, it would be unjust to hold the First National Bank liable on the contract, is immaterial. But the decision of that question does not seem determinative of the case. If the claim plaintiff asserted against the First National Bank was unfounded, it would not necessarily follow that forbearance to press it was not sufficient consideration for the guaranty. Williston, Sec. 135. On the other hand, if we are wrong in the belief that the claim was unfounded, it would not necessarily follow that forbearance to press it was a sufficient consideration. Granting, though not deciding, that plaintiff's forbearance was a detriment to it, the forbearance would not be consideration "unless the parties have dealt with it on that footing." Holmes' Common Law, 292; De Cicco v. Schweizer, 221 N. Y. 431, 438, 117 N. E. 807, L. R. A. 1918E 1004, Ann. Cas. 1918C 816. We pursue the question a little further.

According to the definition of consideration embodied in the Restatement of Law of Contracts (Sec. 75), the act, forbearance or return promise must be "bargained for and given in exchange for the promise." In Philpot v. Gruninger, 14 Wall. 570, 577, 20 L. Ed. 743, it was said that "nothing is consideration that is not regarded as such by both parties." In Fire Insurance Ass'n. v. Wickham, 141 U. S. 564, 579, 12 S. Ct. 84, 88, 35 L. Ed. 860, the statement just quoted from Philpot v. Gruninger, supra, was thus amplified:

"To constitute a valid agreement there must be a meeting of minds upon every feature and element of such agreement of which the consideration is one. The mere presence

of some incident to a contract which might under certain circumstances be upheld as a consideration for a promise, does not necessarily make it the consideration for the promise in that contract. To give it that effect it must have been offered by one party and accepted by the other as one element of the contract.''

In Wisconsin & Michigan R. Co. v. Powers, 191 U. S. 379, 386, 24 S. Ct. 107, 108, 48 L. Ed. 229, it was said that:

''In the case at bar of course the building and operating of the railroad was a sufficient detriment or change of position to constitute a consideration if the other elements were present. But the other elements are that the promise and the detriment are the conventional inducements each for the other. No matter what the actual motive may have been, by the express or implied terms of the supposed contract, the promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting.''

In Ellis v. Clark, 110 Mass. 389, 14 Am. Rep. 609, the defendant had endorsed a note after it was delivered to plaintiff, and as no part of the original contract. The claimed consideration was plaintiff's forbearance to sue Paul, the maker of the note. The court said, among other things, that:

''The minds of the parties must meet and agree upon the terms of the whole contract, including the promise on the one side and the consideration for it on the other. An agreement between the plaintiff and Paul, by which the former agreed to forbear to sue the latter, would not be a consideration for the defendant's promise, if not made at his request or communicated to him at or before the time of the making of his promise.''

In cases of guaranty and suretyship, where it has been claimed that forbearance by the creditor was the consideration for the promise of the guarantor or surety, we find

some confusion in the cases. It is said in some cases that forbearance without a promise to forbear is not a sufficient consideration. These cases, as explained in Williston on Contracts, Sec. 136, note, fail to recognize the validity of unilateral contracts. Other cases say that the promise to forbear is implied from a request to forbear. These cases probably reach a correct result, by making an unnecessary implication. It is not essential that the creditor shall have agreed to forbear. It is sufficient if he did forbear at the request of the guarantor. Crears v. Hunter, 19 Q. B. Div. 341; Dillon v. Lineker, 266 Fed. 688. All the cases agree that mere forbearance without request is insufficient. Williston, Sec. 136. If the forbearance is neither pursuant to a promise nor upon a request it is not bargained for and given in exchange for the promise of the guarantor. The request to forbear, however, need not be expressed, but may be inferred from the surrounding circumstances. Fullerton v. Provincial Bank, (1903) A. C. 309; Miles v. New Zealand etc. Co., 32 Ch. Div. 266, 290; Edgerton v. Weaver, 105 Ill. 43; In re All Star Feature Corp., 232 Fed. 1004; McDonald Bros. Co. v. Koltes, 155 Minn. 24, 192 N. W. 109. Whether the surrounding circumstances show a request is a question of fact. Edgerton v. Weaver, supra; McDonald Bros. Co. v. Koltes, supra; Crofts v. Beale, 11 C. B. 172, and comment thereon by Lindley, L. J., in Crears v. Hunter, 19 Q. B. Div. 346.

It remains to apply the foregoing principles to the facts in the case at bar. The evidence does not show that plaintiff promised to forbear; but such a promise was not necessary. We assume that it did forbear, and the question is whether the forbearance was requested. The evidence does not show any expressed request for forbearance, and whether an implied request should be inferred from the proved circumstances was a question of fact. Before we can reverse the judgment of the trial court, we must believe that the facts not only justified, but required, a finding that forbearance was requested; in other words, we would have to hold that

the only reasonable inference was that there was an implied request.

If plaintiff's claim against the First National Bank had been acknowledged or free from doubt, or, being disputed and doubtful, had nevertheless been recognized by the officers of the bank as a valid subject of compromise, and the request for the guaranty had then been made of defendants as stockholders of the First National Bank, and thereupon the guaranty had been given by defendants followed by forbearance by plaintiff, it would perhaps have been impossible to escape the inference that forbearance was in exchange for the guaranty although forbearance had been neither promised nor expressly requested.

But the case is quite different. The plaintiff's claim had been fully explained to the directors of the First National Bank on May 9, and the directors, including two of the defendants, had taken the position that the bank was not liable, and made no request whatever for forbearance. Several days later, at another meeting, Spalding for plaintiff appealed to defendants, not as directors or stockholders of the First National Bank, but as directors or former directors of the State Bank. The question of the liability of the First National Bank was not discussed. While Spalding testified that, if the guaranty had not been given, the plaintiff intended to continue to urge its claim against the bank, there was no evidence to show that that intention was spoken of or considered at the meeting at which the guaranty was signed. In view of the seeming injustice of plaintiff's claim against the First National Bank, and the recent positive rejection of it by the bank officers, it was improbable that, without any further discussion of the claim, the defendants would have requested forbearance. Why they did sign we need not try to decide. Mr. Spalding did not seem to know. When asked what was the consideration for the signatures of defendants Dodge and McGill, he answered: "I don't know unless it was the consideration that I signed it with them." Asked to state the consideration

for his own signature, he said he thought he signed because the other defendants signed.

It is our opinion that the evidence did not require a finding of an implied request for the forbearance claimed to have been given in exchange for the defendants' promise of guaranty. Even if such forbearance was a detriment to plaintiff, it was not consideration for the guaranty.

The judgment of the District Court will be affirmed.

*Affirmed.*

BLUME, Ch. J., and RINER, J., concur.