# JESSIE L. McLAUGHLIN AND OTHERS v. MINNESOTA LOAN & TRUST COMPANY.[1]

June 29, 1934.

No. 29,871.

*Ueland & Ueland,* for appellants.
*Leonard, Street & Deinard,* for respondent.

*STONE, Justice.*

After an adverse decision, plaintiffs appeal from the order denying a determinative change in the findings or a new trial. Plaintiffs

[1]Reported in 255 N. W. 839.

sue as owners of the reversion in Minneapolis real property which by the then owners was, in 1916, leased for 100 years. In 1921 Warren F. Short became owner of the leasehold through assignment of the entire term. He died testate in December, 1926. By will he created a trust, of which defendant is the trustee. A part of the trust property bequeathed to defendant in trust and later, July 14, 1930, assigned to it by the final decree of distribution of the Short estate and accepted, was the leasehold above referred to and out of which this action arises.

Plaintiffs declare on the covenants of the lease, running with the land, to pay rent, taxes, and assessments, keep the building on the premises insured and in reasonable repair. The leasehold "came to defendant successively," first as special administrator of the Short estate; then as executor thereof; and, finally, July 14, 1930, as the testamentary trustee. Defendant did not expressly assume or otherwise agree to be bound by any covenant of the lease. But during its administration of the estate and until July 14, 1930, when it took over as testamentary trustee, it did make good all such covenants, paying rent and taxes, causing some repairs to be made, and keeping up the insurance. Hence there is no question before us as to its liability either as special administrator or as executor. The only issue presented by the record is whether because of its possession of the property as testamentary trustee it is liable on the covenants already mentioned to pay rent, taxes, and assessments, running with the land or title. The Short trust is said to be insolvent. The leasehold is of little or no present value.

Plaintiffs invoke 2 Mason Minn. St. 1927, § 8189, reading thus:

"Every person in possession of land out of which any rent is due, whether it was originally demised in fee, or for any other estate of freehold, or for any term of years, shall be liable for the amount or proportion of rent due from the land in his possession, although it be only a part of the land originally demised. Such rent may be recovered in a civil action, and the deed, demise, or other instrument showing the provisions of the lease may be used in evidence by either party to prove the amount due from the defendant. Noth-

ing herein contained shall deprive landlords of any other legal remedy for the recovery of rent, whether secured to them by their leases, or provided by law."

Literally, that language might demand recovery. But it does not add anything to the former law determining when rent is due or from whom or to whom. When the statute is examined in the light of its common law antecedents and relations, it at once becomes manifest that it was not intended to create a new liability, but rather and only to make divisible as to amount and apportionable as to time a demand which at the common law was neither. Formerly, if a life tenant leased for a term of years and died between the rent days, the rent for that period was lost. The lessee, even though retaining possession of the land, was under no liability for the rent. Peery v. Fletcher, 93 Or. 43, 182 P. 143; 1 Taylor, Landlord & Tenant (8 ed.) § 389 (p. 462); Perry v. Aldrich, 13 N. H. 343, 38 Am. D. 493.

That rule was abrogated by the distress for rent act [1738] 11 George II, c. 19, § 15, and subsequent similar statutes. Bythewood & Jarman, Leases (5 ed.) p. 92. As part of the general statutory law of England when its American colonies took their leave, it probably became American common law. Anyway, our statute came from that of Massachusetts, now found in 6 Laws Mass. Annotated, c. 186, §§ 4 to 8, inclusive.

In the background is not only the common law bar to apportionment of rent, but also that of *assumpsit* for rent, except upon an express promise contemporary with the demise. Smith v. Stewart, 6 Johns. (N. Y.) 45, 5 Am. D. 186. That helps to explain decisions, the writers of which, familiar with origin and purpose of the statute, were of opinion that it created no new right or liability, but only a new remedy for an old demand; with the added incident that the amount due was made apportionable. It did not change the rule that an under tenant, as distinguished from an assignee of a lease, was not liable to the lessor. Campbell v. Stetson, 2 Metcalf (Mass.) 504. The two sections of the Massachusetts statute there referred to by Mr. Chief Justice Shaw are consolidated in substance in our § 8189. Plaintiffs were after rent from an under tenant, not

only for a part of the term of the lease but also for a time during which he held over. Judgment went for defendants because, in the language of the distinguished Chief Justice [2 Metcalf (Mass.) 504]:

"Section 22d declares that every person in possession of land, out of which any rent is due, shall be liable for a proportion of the rent, etc. Section 23d gives an action of debt to recover rent. These are part of a series of provisions respecting long terms, where a rent is reserved, and where the lands, out of which such rents are to issue, are to be treated as real estate, and as such may be divided and subdivided, by descent, partition, levy of execution, and otherwise, with various detailed provisions in regard to terms and the apportionment and recovery of rents. But these statutes do not declare when and by what acts a right to rent shall be created, vested, and transferred; but only declare how it may be recovered when it is due; that is, apportioned and recovered in an action of debt. They are intended to prescribe remedies; not to establish rights; and do not affect the question, whether an under-lease, like the present, gives a right to the landlord to recover of the sub-lessee."

Mr. Justice Berry must have entertained the same view when in Dutcher v. Culver, 24 Minn. 584, 589, he referred to the statute as one making the possessor of land liable in a civil action "for the proportionate amount of rent due from the land in his possession, although it be only a part of what was originally demised."

In Daniels v. Richardson, 22 Pick. (Mass.) 565, 571, an executor of a lessee was held liable "on apportionment of the reserved rent." The question was considered "placed beyond doubt" by the revised statute. Again, through Mr. Chief Justice Shaw, the court said [22 Pick. (Mass.) 569]:

"And it seems to be equally well settled, that when the estate, out of which the rent issues, is assigned to two or more, the rent shall be apportioned to each part according to its annual value. Indeed this necessarily follows from the general provision, that the assignee shall be liable in debt for the rent; otherwise, and if the rent could not be apportioned, the right of the lessor to the rent could be defeated, by conveying the estate to two or more persons. Montague v. Gay, 17 Mass. R. 439."

■ We are in the realm of real property law, particularly the province of landlord and tenant and their assigns. Despite all that parliaments and judges have done on the subject, there remain important rules which are direct legacies of feudal law. One, which in broad outline has remained unchanged for centuries, is that of covenants which run with the land and follow the title into the hands of whomsoever it may come. Some operate in favor of the reversioner; others are for the benefit of the lessee and his assigns. As to the latter, the rule is thus stated, 2 Taylor, Landlord & Tenant (8 ed.) § 437:

"An assignee takes all the interest of the assignor in the thing assigned, whether in possession or expectancy; but he takes it subject to all equities to which the original party is subject, and must therefore perform all covenants which are annexed to the estate so long as he is in possession. For when a covenant relates to, or is to operate upon, a thing in being, parcel of the demise, the thing to be done by force of the covenant forms a part of the demise, and goes with the land, binding the assignee to performance, though not named; and the assignee, by accepting possession of the land, subjects himself to all such covenants."

The liability of a lessee's assignee, in the absence of circumstances obligating him contractually to the lessor, is based solely upon privity of estate, which comes into being as to him when, having title to the leasehold, he enters upon the demised premises. Thereby is created that successive relationship to the same property and its title which is known as privity of estate, upon which the law bases the resulting liability of both parties. Trask v. Graham, 47 Minn. 571, 573, 50 N. W. 917. In the instant case the testator, Short, was absolute assignee of the lease. Defendant took from him all the title he had and so can be no otherwise than an absolute assignee itself.

It is argued for defendant, upon the analogy of cases dealing with the liability of executors and administrators (e. g. Becker v. Walworth, 45 Ohio St. 169, 12 N. E. 1; Inches v. Dickinson, 2 Allen [Mass.] 71, 79 Am. D. 765; Tremeere v. Morison, 1 Bing. [N. C.] 89),

that defendant as testamentary trustee is individually liable, only to the extent of the rental actually received by it. Or, at best, counsel say, the trust estate being insolvent, it cannot be liable beyond the rental value, or the assets in the trustee's hands applicable to its demand, of which there are none. (That is the view adopted by the decision below.) But the determining fact remains that defendant, unlike an executor or administrator, in taking the trust property as testamentary trustee became as completely and durably an assignee of the leasehold as though it were direct assignee of the lessee. Hence we perceive no reason for limiting its liability for rent and taxes in any manner or to any extent. It is an assignee in possession, and not a mere *quasi* assignee as it is said an executor is. 1 Underhill, Landlord & Tenant, p. 44. It follows, and we hold, that it is liable individually for breaches of covenants which run with the land and which have occurred during the term of its possession as trustee.

While it is true that an executor may be simultaneously a testamentary trustee; and while in one sense the latter continues to the end a *quasi* executor, there is under modern probate practice a very definite change in the character of the estate taken when executorship ceases and trusteeship begins. Under our probate decrees of distribution the temporary character of the executor's function and tenure of title is ended. In its place comes the different function and tenure of the trustee. The duty of administration and distribution is terminated and the trust property definitely assigned to the trustee for purposes which may not be accomplished for many years. Longevity much characterizes testamentary trusts.*

At law a trustee is regarded as owner of the trust property with "all the rights and subject to all the liabilities of ownership." Wahl v. Schmidt, 307 Ill. 331, 336, 138 N. E. 604, 606. He has both title and dominion. Merriam v. Wagener, 74 Minn. 215, 77 N. W. 44. Of leaseholds, we repeat, trustees may be, and usually are, as much

---

*Contrary to a commonly prevailing notion, an executor or administrator is not a trustee. Restatement, Trusts (Tent. Draft No. 1) § 9. The accompanying "comments" indicate fully the reasons for the statement and illustrate its application. He is a fiduciary only.

assignees as anyone can be. If a trustee-assignee is not bound individually by covenants running with the land, neither are the lessor or his assigns so bound to him. A holding to the latter effect would be unwelcome to both trustees and their counsel. In the long run it would be strongly counter to the interests of the beneficiaries.

Liability arises in but slightly different fashion on the contract of a trustee. Personal liability attends, unless contracted against, as matter of law. Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650. The trustee is liable or no one is liable. The trust estate itself cannot be liable to suit. It is but the fund out of which the trustee may reimburse himself for proper expenditures. The running of a covenant affixed to the title, and intended to be firmly so fastened, would be interrupted and the covenant *pro tanto* detached if the liability of a trustee holding the leasehold as assignee could be restricted as argued for by defendant. It is the law of England that even executors and administrators are liable for breach of covenants to repair and equally so for breach of that to insure. Bythewood & Jarman, Leases (5 ed.) p. 145; Kirklinton v. Wood [1917] 1 K. B. 332. In Wollaston v. Hakewill [1841] 3 Mann. & Gr. 297, an executor was sued for nonpayment of rent and "non-reparation,". and the court said (*Id.* 320) :

"The executrix, if she had *entered,* and had by such *entry* become possessed, might have been charged as assignee of the term, generally, for breaches of covenant after the testator's death."

By Restatement, Trusts (Tent. Draft No. 4) § 257, it is declared:

"The trustee as holder of the title to the trust property is subject to personal liability to third persons to the same extent that he would be liable if he held the property free of trust."

The conclusion is inescapable that the law is thus correctly declared. Although counsel seem to have searched the decision law (with much of text and statute as well) of England and America from the year books on, they have cited us to no case precisely in point. But the rule seems so plain that its application cannot be escaped merely because of the loss resulting to a defendant from no wrongdoing. The trustee's liability follows irresistibly from the

fact that, having title, he has taken possession and thereby obligated himself to the performance of the covenants that ordinarily go with title and possession, wherever they go and into whomsoever's hands they come. Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638, 640, is presently relevant only for its declaration (at p. 544) that "an estate sufficient to have cast on it the burden of covenants running with the land will entitle the owner of it to the benefit of similar covenants, and e converso." The conclusion was that a mortgagee in possession was not subject to the burdens nor entitled to the benefits of such covenants because it had no more than a lien and no estate or title to which the covenants could attach.

We need not here examine the law concerning the duties in respect to leaseholds of assignees in insolvency and trustees in bankruptcy. (See 3 Remington, Bankruptcy, § 1212, et seq.) As to the former, it is settled here by Forepaugh v. Westfall, 57 Minn. 121, 124, 58 N. W. 689, 690, as "a well established principle," that if an assignee for the benefit of creditors does accept a leasehold estate "he is liable personally for the rent while he holds the lease, the same as any other assignee holding a leasehold interest." Obviously, such an assignee is much more an officer of court than a testamentary trustee and so to be regarded as a quasi trustee if possible. But the law is, notwithstanding, that he is an actual assignee and liable accordingly. While trustees such as defendant are under direction of court, they are not officers of court. Gunn v. Smith, 71 Minn. 281, 73 N. W. 842. It is but a statutory precaution that, upon a vacancy arising in a trusteeship, the trust estate may vest in the district court (2 Mason Minn. St. 1927, § 8103), which thereby may become a temporary repository of title, but in such qualified fashion and for such special and temporary purposes that there can be no valid suggestion that liability of the court or its judges would arise under the covenants of a lease which happened to be part of the trust property.

Argument has dwelt upon the hardship supposed to result from the imposition of liability upon trustees. One answer is that, were it otherwise, there would be similar hardship and resulting loss to lessors and their assignees. Another is the reciprocity of the rule,

for there are conventional covenants to the performance of which by lessor or reversioner a trustee as assignee of the lease is entitled. Finally, trustees become such voluntarily. They are privileged to decline. They may refuse to accept a leasehold as part of trust property, thereby avoiding personal liability under the covenants of the lease. Doubtless, by negotiating with the reversioner, they can in many cases come to an agreement whereby their liability will be brought within the limits of the profit from the demised property. Liability can be terminated by assignment. So the balance of convenience and hardship does not weigh unduly against trustees as a class. But that is not the reason for this decision, which is but a declaration of the law as we find it. Long has it been so, and changes therein are for legislatures rather than judges.

Absurd as it may seem to the modern and sensible aversion to anything which smacks of sham, it remains law that an assignee of a lease may, by assigning it, even to a pauper, put an end to his liability in point of time. See annotation, Ann. Cas. 1916E, 788, 805; Cohen v. Todd, 130 Minn. 227, 153 N. W. 531, L. R. A. 1915E, 846. The legal operation is simple. The holder of it divests himself of the title, the thing to which the obligation is fastened, and so rids himself of the whole burden. By the same token, a mere offer to surrender the lease, unaccepted, can have no such effect because it leaves both title and obligation where they were. So also of mere abandonment of the premises. W. C. Hines Co. v. Angell, 188 Minn. 387, 247 N. W. 387.

The order under review must be reversed and the cause remanded for such further proceedings as may be necessary to a judgment consistent with this decision.

So ordered.