# E. J. BAEHR AND ANOTHER v. PENN-O-TEX OIL CORPORATION.

104 N. W. (2d) 661.

August 5, 1960—No. 37,810.

*Bowen, Bowen, Preus & Farrell,* for appellants.
*Loring M. Staples* and *Faegre & Benson,* for respondent.

LOEVINGER, JUSTICE.

This is an action for rents which defendant is claimed to owe plaintiff[1] because of possession and contract.

Plaintiff leased certain gasoline filling stations to one Kemp, doing business as Webb Oil Company, under written leases. Kemp was purchasing the business known as Webb Oil Company and certain related property from defendant. On account of these transactions and purchases of petroleum products, Kemp was heavily indebted to defendant. Kemp became unable to meet payments due to defendant and on December 10, 1955, gave defendant an assignment of accounts receivable and to become receivable, including those involving the plaintiff's filling stations. Thereafter, during the period involved here, defendant collected rents paid by the operators of the filling stations, received other payments made to Webb Oil Company, paid some of its debts at Kemp's direction out of these sums, and installed its agent in the office to run the business.

Plaintiff was in Florida when he received a letter dated December 28, 1955, from Kemp, stating that defendant had all of Kemp's assets tied up. A short time after this, plaintiff called defendant's agent to ask about payment of the filling station rents. Plaintiff was told "that

---

[1]The action was brought in the name of plaintiff and his spouse but for all practical purposes was treated as though there was only one plaintiff.

Mr. Kemp's affairs were in a very mixed up form but that he would get them straightened out and mail me [plaintiff] my checks for the rent." Hearing nothing further, plaintiff wrote a letter to defendant asking what he had to do to get his rent checks and adding: "Or will I have to give it to an attorney to sue." Defendant replied by letter stating it was attempting to assist Kemp in keeping the business going, "but in no way are operating or taken possession." The letter denied knowledge of or responsibility for any rent due plaintiff. A week or 10 days after receiving this letter, plaintiff again called defendant and asked for his rent. Defendant's agent then said to plaintiff, "they [the company] were interested and that they would see that I [plaintiff] got my rent, and would take care of it, and they would work it out with the head office. * * * He said he would take it up with them and they would assure me my rent."

The rent was not paid, and in April or May 1956 plaintiff returned to Minneapolis from Florida. Soon after this plaintiff consulted a lawyer, and "shortly thereafter, as rapidly as the lawyer could get moving, a suit was started." On June 2, 1956, plaintiff sent defendant a letter advising that he was reentering and taking possession under the leases of the filling stations and because of failure to receive rent. On July 10, 1956, this suit was started for rents due on the filling stations for the period December 1, 1955, through June 2, 1956, upon the grounds that defendant was in possession of the stations and had contracted to pay the rent during this period.[2]

The case was fully tried on all issues in the district court.[3] At the conclusion of plaintiff's evidence, the court ruled that the evidence was conclusive that defendant neither took possession of the filling stations

---

[2]The complaint did not expressly allege liability upon a contract, but the issue was raised in pretrial proceedings, the pleadings were amended at the beginning of the trial, the issue has been fully litigated and briefed, and is, accordingly, in the case.

[3]In the court below plaintiff claimed that the transaction between Kemp and defendant was an assignment for the benefit of creditors which imposed an obligation upon defendant to make payments to plaintiff. The district court ruled that this claim was not sustained, and plaintiff has now abandoned this theory.

nor an assignment of Kemp's leases. Defendant then presented evidence on the issue of a contract to pay the rents, and this issue was submitted to the jury under proper instructions. The amount that would be due under such a contract was agreed upon; and the jury returned a verdict for plaintiff in that amount. Thereafter, the district court granted defendant's motion for judgment notwithstanding the verdict; and ordered a new trial in the event of reversal. Plaintiff appealed.

■ Plaintiff contends that defendant is liable for the rents pursuant to M. S. A. 504.04, relating to the liability for rent of persons in possession of land. This court has previously pointed out that the statute did not create a new liability, but rather made divisible as to amount and apportionable as to time a liability which existed at common law but was neither divisible nor apportionable.[4]

■ Apart from statute, the assignee of a leasehold in possession of leased premises is liable for the rent.[5] There is a rebuttable presumption that one in possession of leased premises is there as an assignee of the lessee.[6] Even without a formal assignment, one in possession may be an equitable assignee and subject to the covenants and obligations of the lease.[7] An assignment occurs where, and only where, a lessee transfers his entire interest, without regard to the form of the transaction.[8] However, the liability of an assignee arises by privity of estate, rather than privity of contract, and thus may be terminated by further assignment.[9]

■ "Possession" is a chameleon-like term which takes its meaning from its context both in common speech and in legal terminology.[10]

---

[4]McLaughlin v. Minnesota L. & T. Co. 192 Minn. 203, 255 N. W. 839.

[5]McLaughlin v. Minnesota L. & T. Co. 192 Minn. 203, 255 N. W. 839.

[6]Minnesota L. & T. Co. v. Medical Arts Bldg. Co. 192 Minn. 6, 255 N. W. 85.

[7]Minnesota L. & T. Co. v. Medical Arts Bldg. Co. 192 Minn. 6, 255 N. W. 85.

[8]Kostakes v. Daly, 246 Minn. 312, 75 N. W. (2d) 191; 51 C. J. S., Landlord and Tenant, § 37; 32 Am. Jur., Landlord and Tenant, § 313.

[9]O'Neil v. A. F. Oys & Sons, Inc. 216 Minn. 391, 13 N. W. (2d) 8; Forepaugh v. Westfall, 57 Minn. 121, 58 N. W. 689.

[10]National Safe Deposit Co. v. Stead, 232 U. S. 58, 34 S. Ct. 209, 58 L. ed. 504.

The term is used interchangeably to denote the legal concepts of "actual possession" and "constructive possession."[11] With reference to land, the legal concept of "actual possession" is substantially the same as "actual occupancy," which means physical presence upon and control of premises.[12] "Constructive possession" is more difficult to define. It is usually said to mean the legal right to possession which follows from title without actual possession.[13]

■ In any event, it is unnecessary in this case to attempt further refinement of these definitions. The mere assignment, as security for a debt, of the right to receive rents from a sublessee is not sufficient under the authorities to amount either to an assignment of the lease or to possession of the leased premises. The fact that defendant installed its agent in lessee's office to receive sums due lessee and assigned to defendant does not render defendant liable to pay lessee's rents to plaintiff.[14]

■ The issue whether there was a contract by defendant to pay plaintiff is more doubtful. Unfortunately, contract, like most of the basic terms constituting the intellectual tools of law, is conventionally defined in a circular fashion. By the most common definition, a contract is a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law recognizes as a duty.[15] This amounts to saying that a contract is a legally enforceable promise.[16] But a promise is legally enforceable only if it is a contract. Thus nothing less than the whole body of applicable precedents suffices to define the term "contract."

Although the definition of contract does not help much in determining what expressions shall be held to impose legal obligations, it does

---

[11]72 C. J. S., Possession, p. 233; 73 C. J. S., Property, § 14; 42 Am. Jur., Property, § 42.

[12]Thompson v. Town of Berlin, 87 Minn. 7, 91 N. W. 25; Cutting v. Patterson, 82 Minn. 375, 85 N. W. 172.

[13]73 C. J. S., Property, § 14; 42 Am. Jur., Property, § 43.

[14]Fisher v. Pforzheimer, 93 Mich. 650, 53 N. W. 828.

[15]Restatement, Contracts, § 1; 1 Williston, Contracts (3 ed.) § 1; see, 17 C. J. S., Contracts, § 1.

[16]1 Corbin, Contracts, § 3; 12 Am. Jur., Contracts, § 2.

direct attention to a promise as the starting point of inquiry. Both in popular and legal usage, a promise is an assurance, in whatever form of expression given, that a thing will or will not be done.[17] While we must take care to distinguish between statements meant to express merely present intention and those meant to give an assurance as to a future event,[18] this involves no more than the common difficulty of seeking precise meaning in the usually imprecise, and often careless, expressions of ordinary colloquy.

If we accept plaintiff's version of the statements made by defendant's agent, as we are required to do by the verdict, there was an unequivocal assurance given that the rents would be paid. This cannot be anything but a promise.

However, the fact that a promise was given does not necessarily mean that a contract was made. It is clear that not every promise is legally enforceable. Much of the vast body of law in the field of contracts is concerned with determining which promises should be legally enforced. On the one hand, in a civilized community men must be able to assume that those with whom they deal will carry out their undertakings according to reasonable expectations. On the other hand, it is neither practical nor reasonable to expect full performance of every assurance given, whether it be thoughtless, casual and gratuitous, or deliberately and seriously made.

The test that has been developed by the common law for determining the enforceability of promises is the doctrine of consideration. This is a crude and not altogether successful attempt to generalize the conditions under which promises will be legally enforced.[19] Consideration requires that a contractual promise be the product of a bargain. However, in this usage, "bargain" does not mean an exchange

---

[17]Webster's New International Dictionary (2 ed.) (1947) p. 1980; Holmes, The Common Law, p. 299.

[18]McCarty v. Nelson, 233 Minn. 362, 370, 47 N. W. (2d) 595, 599; In re Estate of Sickmann, 207 Minn. 65, 289 N. W. 832; Carlson v. Krantz, 172 Minn. 242, 214 N. W. 928, 54 A. L. R. 545.

[19]See, Ballantine, *Is the Doctrine of Consideration Senseless and Illogical?*, 11 Mich. L. Rev. 423, Selected Readings on the Law of Contracts, p. 588.

of things of equivalent, or any, value. It means a negotiation resulting in the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other.[20] Consideration thus insures that the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or negotiation. In this view, the requirement of consideration is no mere technicality, historical anachronism, or arbitrary formality. It is an attempt to be as reasonable as we can in deciding which promises constitute contracts. Although the doctrine has been criticized,[21] no satisfactory substitute has been suggested. It is noteworthy that the civil law has a corresponding doctrine of "causa" which, to the eye of a common-law lawyer, is not much different than consideration.[22]

■ Consideration, as essential evidence of the parties' intent to create a legal obligation, must be something adopted and regarded by the parties as such.[23] Thus, the same thing may be consideration or not, as it is dealt with by the parties.[24] In substance, a contractual promise must be of the logical form: "If . . . (consideration is given) . . . then I promise that . . ." Of course, the substance may be expressed in any form of words, but essentially this is the logical structure of those promises enforced by the law as contracts.[25]

■ Applying these principles to the present case, it appears that although defendant's agent made a promise to plaintiff, it was not in such circumstances that a contract was created. Plaintiff correctly states that an agreement of forbearance to sue may be sufficient con-

---

[20]See, Ames, *Two Theories of Consideration,* 12 Harv. L. Rev. 515; Id. 13 Harv. L. Rev. 29, Selected Readings on the Law of Contracts, p. 320.

[21]1 Chitty, Contracts (21 ed.) par. 80, p. 40; Pound, An Introduction to the Philosophy of Law, p. 236, et seq.

[22]Lorenzen, *Causa and Consideration in the Law of Contracts,* 28 Yale L. J. 621, Selected Readings on the Law of Contracts, p. 565.

[23]Suske v. Straka, 229 Minn. 408, 39 N. W. (2d) 745; Nybladh v. Peoples State Bank, 247 Minn. 88, 76 N. W. (2d) 492; 12 Am. Jur., Contracts, § 75; 17 C. J. S., Contracts, § 74.

[24]Holmes, The Common Law, p. 292.

[25]See, e. g., Hartung v. Billmeier, 243 Minn. 148, 66 N. W. (2d) 784.

sideration for a contract.[26] Plaintiff further contends that his failure to institute suit immediately upon learning of Kemp's assignment to defendant permits an inference of an agreement to forbear from suit in consideration for defendant's assurance of payment of rents to plaintiff. This court has held that circumstantial evidence may support the inference of such an agreement to forbear.[27] However, such an inference must rest upon something more than the mere failure to institute immediate suit.[28] The difficulty with plaintiff's case is that there is no more than this.

Plaintiff's conversation with defendant's agent was about the middle of February 1956 while plaintiff was in Florida. Plaintiff returned to Minneapolis, which was his residence as well as the jurisdiction where defendant was found, about the latter part of April or the first of May 1956. Soon after this he consulted a lawyer, and suit was started "as rapidly as the lawyer could get moving." There is nothing in the evidence to suggest that plaintiff deferred initiating legal action any longer than suited his own personal convenience. There is nothing in the evidence to suggest that defendant sought any forbearance by plaintiff or thought that it was securing such action; nor is there any evidence that plaintiff's delay from the middle of February until April or May in undertaking legal action was related to defendant's promises. There is no evidence that either of the parties took defendant's assurances seriously or acted upon them in any way. There was, therefore, no consideration, and the promises did not amount to a contract. Since the district court was correct in ordering judgment entered for the defendant, notwithstanding the verdict, on this ground, it is unnecessary to consider other points relating to enforceability of the alleged contract.

Affirmed.

---

[26]McDonald Brothers Co. v. Koltes, 155 Minn. 24, 192 N. W. 109; Bank of Montreal v. Beecher, 133 Minn. 81, 157 N. W. 1070.

[27]McDonald Brothers Co. v. Koltes, 155 Minn. 24, 192 N. W. 109.

[28]In McDonald Brothers Co. v. Koltes, *supra,* the promisor gave the promisee promissory notes for a preexisting debt. The court said that the transaction was prima facie evidence that the creditor's remedy was suspended until the maturity of the notes given. Thus there was a clear forbearance for a definite period of time.